DOB & DOB *against* HALSEY.

Where one partner delivers partnership property to a third person, who receives it, knowing that it is partnership property, in payment of his individual debt; in an action by the partners against the creditor of the individual partner, for the price of the goods, the debt of the one partner is not a defence, or set-off, against all the partners.

Where one person advances funds for carrying on trade, and another furnishes his personal services, for which he is to receive a proportion of the profits, there is a partnership existing between them, both as regards the partners themselves and third persons.

In an action for the breach of a contract relative to the partnership concerns, if all the partners do not join as plaintiffs in the suit, the nonjoinder of the other partners is a ground for a nonsuit at the trial.

THIS was an action of *assumpsit* brought to recover the price of a certain quantity of timber sold and delivered by the plaintiffs to the defendant. The defendant pleaded *non-assumpsit*, with notice of set-off; and the cause was tried before Mr. J. *Van Ness*, at the *New-York* sittings, in *July*, 1817.

A raft of timber, of which the timber in question was part, was purchased of the original owner by *George Moore*, and was paid for by the plaintiffs, partly in cash, and partly in their own notes. A receipt, dated *May* 27th, 1815, was given by the seller, in which the cash and notes were expressed to be received of the plaintiffs. An agreement, dated the 21st of *May*, 1815, was produced in evidence, between the plaintiffs of the one part, and *Moore*, of the other; by which *Moore* covenanted to superintend the sawpits and lumber-yard of the plaintiffs, for one year, in consideration of his receiving one-third part of the net profits. It was generally understood, that *Moore* was a partner with the plaintiffs. Before the raft was removed, *Moore* delivered part of the timber to the defendant. Upon this testimony, the defendant moved for a nonsuit, on the ground, 1. That there was not sufficient proof that the timber belonged to the plaintiffs; and, 2. That the plaintiffs and *Moore* were partners, and should have joined in the action; or, 3. If they were not partners, and the plaintiffs were the owners of the timber, the action should have been trover. But the judge overruled the motion.

It was proved, on the part of the defendant, that *Moore* was indebted to him on a note, for about four hundred and thirty-seven dollars, which having been protested, *Moore* offered to pay it in timber; and the defendant, as the only means of obtaining payment, *Moore's* circumstances being bad, accepted the offer. The timber in question, estimated at 482 dollars and 50 cents, was, accordingly, delivered to the defendant, who paid *Moore* the difference between the

price of the timber and the amount of the note, in cash. A verdict was taken, subject to the opinion of the Court, for the plaintiffs, for the price at which the timber was sold by *Moore*, with interest.

*Slosson*, for the plaintiff. 1. The first question is, whether *G. Moore* was a partner with the plaintiffs? A participation in the *profits* would, no doubt, make him liable as to third persons, who trusted the firm. But, as between the parties themselves, the question is, whether *G. M.* had any interest or property in the partnership effects. In *Hesketh* v. *Blanchard*, (4 *East*, 144.) where the defendant, who had neither money nor credit, offered the plaintiff, that if he would order certain goods to be shipped, on a joint adventure, he should have half the *profits* for his trouble, and the plaintiff lent his credit, and ordered the goods on their joint account: It was held, that, although as to *third* persons, this was a partnership; yet, as between the parties themselves, it was nothing more than an agreement for compensation for trouble and credit; and that, therefore, an action would lie by the plaintiff against the defendant to recover his share of the profits. Lord *Ellenborough* adopted the distinction taken by Lord Chief Justice *Eyre*, in *Waugh* v. *Carver*, (2 *H. Bl.* 235. 246.) The same distinction was recognised by this Court, in *Muzzy* v. *Whitney*, (10 *Johns. Rep.* 226.) on the authority of the case of *Hesketh* v. *Blanchard*.

2. It is clear, that the defendant obtained this property for the express purpose of procuring payment of the debt due to him by *Moore;* and he had good reason to believe that the timber belonged to the plaintiffs. It is a case, then, of fraudulently obtaining the property of the plaintiffs; and the question arises, whether *assumpsit* or *trover* is the proper action. Where a person comes into possession of goods, to which he has no right, and sells them, the owner may waive the *tort*, and bring *assumpsit* to recover the price or value of the property. (*Lamine* v. *Dorrell*, 2 *Lord Raym.* 1216. *Kitchen* v. *Campbell*, 3 *Wils.* 304. *Hussey* v. *Fiddall*, 12 *Mod.* 324.)

3. Unless the defendant can show, that the payment, by the note of *M.*, was a valid payment, the plaintiffs must recover. Affirming the sale, by this form of action, does not prevent the plaintiffs from disaffirming the payment. A fraudulent payment is no payment in law. In *Browne* v. *Robinson*, (2 *Caines' Cases in Error*, 341.) it was decided, that where goods are purchased from a factor, knowingly, with intent to set off against the *factor* a demand which the purchaser has against the *factor*, the principal may bring an action as on a sale made immediately by himself, against the purchaser ; such a purchase, made solely with intent thereby to obtain payment, or security, for a debt from the factor, being, as against the principal, *fraudulent.* So, in *Allison* v. *Matthieu*, (3 *Johns. Rep.* 235.) it was decided, that where there has been any fraud or collusion on the part of the purchaser, in order to get possession of the property of the plaintiff, it vitiates and avoids the sale. (*Van Cleef* v. *Fleet*, 15 *Johns. Rep.* 151. S. P.) In *Wells* v. *Masterman*, (2 *Esp. N. P. Rep.* 731.) Lord *Kenyon* ruled, that if a man deals with one partner only, and draws a bill on the firm, on account of such separate debt, he is guilty of fraud, and the acceptance, while in his hands, made by that partner, would be void.

*D. S. Jones*, contra. There was no allegation or pretence, at the trial, of any fraud on the part of the defendant ; nor is there any thing in the case to warrant the suggestion. It cannot, therefore, be made the ground of argument here.

1. The action, if the plaintiffs have any right of action at all, is misconceived. It should have been *trover*, not *assumpsit*. It is true, that where there is a contract, connected with a *tort*, the tort may be waived, and the contract resorted to ; not so, where there is a mere *tort*, and no contract whatever. If a defendant has agreed with the plaintiff's servant to pay half price for goods, which the servant is to have for his own use, *assumpsit* will not lie, for no contract arises to the plaintiff. He might, as *Buller*, J. observes, as well bring assumpsit against one who steals his goods. (*Buller's N. P.* 130.)

ALBANY,
January, 1819.

DOB
v.
HALSEY.

2. There was not sufficient evidence to show that the timber was the property of the plaintiffs.

3. The plaintiffs and *Moore* were partners, and the action cannot, therefore, be maintained by the plaintiffs alone. (*Grace* v. *Smith*, 2 *Wm. Bl. Rep.* 998. *Dry* v. *Boswell*, 1 *Camp. N. P. Rep.* 329.) The cases cited by the defendant's counsel, show that they were partners, in regard to *third* persons, at least. If so, they must all join in the action, for third persons, or the world at large, have a right to insist on their bringing their actions properly, or in the name of all the partners.

4. If *Moore* was a partner, then the receipt given by him to the defendant, was a sufficient discharge for the price of the timber. The cases cited, merely show, that where one partner purchases goods for his own private use, though in the name of the firm, and that known to the seller, it is not a partnership debt. One partner may apply the partnership funds to the payment of his own separate or private debt. If A. and B. are partners, and C. owes them a sum of money, and A. gives C. a receipt in full, upon setting off a private debt due by himself to C., this will be a bar to a suit by the partners, against C., for the partnership debt. (*Henderson and Smith* v. *Wild*, 2 *Camp. N. P. Rep.* 561.)

Again; *Moore* having the sole conduct and management of the business, his settlement with the defendant must be conclusive. If he acted merely as agent, and the defendant did not know it, he had a right to set off his demand. (*George* v. *Clagget*, 7 *Term Rep.* 354)

*Slosson*, in reply, said, that the case did present the question of fraud. It is like the defendant colluding with a discarded servant to obtain satisfaction of his debt. In *Sheriff* v. *Wilkes and others*, (1 *East*, 48.) where the plaintiff knowingly drew a bill upon three partners, for the amount of a debt due to him from two of them, before the third was admitted into the concern, and which was accepted in the partnership name, without the knowledge or assent of the third partner, the acceptance was held to be fraudulent and void as against the third partner. And in *Hope* v. *Cust*, cited in that case, Lord *Mansfield* defines

*covin* to be a contrivance between two to defraud or cheat a third.

The question is, cannot the plaintiffs affirm the contract made with *M.*, and bring assumpsit to recover the price of the timber? The defendant having knowingly dealt with *M.*, as the agent of the plaintiffs, is estopped to deny that he was their agent. The very object of the transaction was to obtain satisfaction or security for the debt due to the defendant from *M.*, not for the purchase or sale of the timber in the regular course of trade. It was, therefore, according to the doctrine laid down in the cases cited, a fraud on the plaintiffs.

SPENCER, J. delivered the opinion of the Court. Two questions arise; 1st. Whether the payment for the timber by the defendant to *G. Moore*, by giving up a note, which the defendant held against him, under the circumstances of the case, exonerates the defendant from any further liability to the plaintiff? 2d. Whether this suit can be sustained by the plaintiffs alone?

1. This Court has decided, in several cases, that where a note is given in the name of a firm, by one of the partners, for the private debt of such partner, and known to be so, by the person taking the note, the other partners are not bound by such note, unless they have been previously consulted, and consent to the transaction. (*Livingston* v. *Hastie & Patrick*, 2 *Caines*, 246. *Lansing* v. *Gaine & Ten Eyck*, 2 *Johns. Rep.* 300. *Livingston* v. *Roosevelt*, 4 *Johns. Rep.* 251.) In *Ridley and another* v. *Taylor*, (13 *East*, 175.) the Court of King's Bench held, that if one partner draw or endorse a bill in the name of the partnership, it will, *prima facie*, bind the firm, although passed by one partner to a separate creditor, in discharge of his private debt, unless there be covin between such separate debtor and creditor, or, at least, the want of authority, either express or implied, in the debtor partner, to give the security of the firm for his separate debt.

The only difference between the decision of this Court and that of the King's Bench, consists in this: We require the separate creditor who has obtained the partnership paper

for the private debt of one of the partners, to show the assent of the whole firm to be bound. The rule of the King's Bench throws the burthen of avoiding such security on the firm, by requiring them to prove, that the act was covinous on the part of the partner, for whose private debt the paper of the firm was given, by showing that it was done without the knowledge, and against the consent, of the other partners, and that the fact was known to the separate creditor when he took the paper of the firm.

I can perceive no substantial difference whether the note of a firm be taken for a private debt of one of the partners, by a separate creditor of the partner pledging the security of the firm, and taking the property of the firm upon a purchase of one of the partners, to satisfy his private debt. In both cases, the act is equally injurious to the other partners; it is taking their common property to pay a private debt of one of the partners.

The facts in this case show, that the defendant not only knew that this was partnership property, but that he had every reason to believe that the other partners, had they been informed of the sale of the timber to pay *Moore's* private debt, would have objected to it; for it is evident, that *Moore* was a man of very little property, and the defendant took the timber for fear of wholly losing his debt. It is equally clear, that the plaintiffs furnished *Moore* the means of buying the timber, and by advancing their money and notes to pay for it.

When, therefore, the defendant purchased the timber, he became the debtor of the plaintiffs, and that debt cannot be cancelled by setting off a debt due from *Moore* to the defendant.

Had *Moore* paid the defendant the debt due to him, in money which he had taken out of the partnership fund, it would have presented a different question. Such a payment would have been valid, in the absence of all proof, that the defendant knew that the money of the firm had been thus misapplied. In such a case, there would be ground for presuming, that the transaction was fair, and that the debt had been paid out of the private funds of the partner indebted. In this case, there can be no such pre-

sumption, for there can be no doubt, that the defendant knew that *Moore* was paying his private debt with the partnership property.

2. As to the second point; it does not admit of a doubt, that *G. Moore* was a partner with the plaintiffs. The articles do not provide for the advancing money by the plaintiffs to make the purchases of timber. Admitting, however, that the agreement authorizes that inference, *Moore* was to furnish an equivalent for that, by his personal services in superintending the sawpit, and lumber yard ; and he was, in consideration of his services, to receive one third of the net profit. Now, it is a very clear proposition, that he who is to take a part of the profits indefinitely, shall, by operation of law, be made liable to losses ; upon the principle, that by taking part of the profits, he takes from the creditors a part of that fund which is the security for the payment of their debts. (*Green* v. *Smith*, 2 *Bl. Rep.* 998. *Waugh* v. *Carver*, 2 *H. Bl.* 245. 4 *East*, 144.)

There may be, and some of the cases cited admit the position, a partnership, as respects third persons, when the transaction would not be such as between the partners themselves. This is not such a case ; here is a full, clear, and decided partnership, as regards the partners themselves, as well as third persons. It is essentially different from the case of *Muzzy* v. *Whitney*, (10 *Johns. Rep.* 226.)

If *G. Moore* is to be regarded as a partner with the plaintiffs, and would be liable for all the debts contracted during the existence of the co-partnership, which I consider perfectly clear, then he ought to have been joined in the suit; for in actions arising *ex contractu*, where the legal interest is joint, those in whom such interest is vested, must, if living, join in an action for the breach of such contract ; and the objection may be made upon the trial, as a ground of nonsuit, upon the general issue, if it appears that there is another person living, not made a party, who has a joint interest in the contract. (1 *Chitty Pl.* 6, 7.) If the fact appears on the face of the declaration, it is good cause for arresting, or reversing the judgment.

Judgment of nonsuit.