BURCKLE *vs.* ECKART, impleaded with Gibb and others.

A person in business may employ another as a subordinate, and agree to pay him a share of the profits, if any shall arise as a compensation for his services, without giving the person so employed the rights, or subjecting him to the liabilities of a partner.

A firm of merchants engaged in general business, and trading, among other things, in provisions, employed a third person to attend to the purchasing and forwarding of produce, who was to act under the orders of the firm, and have as a compensation for his services one fourth of the profits arising out of the purchase and sale of produce ; *held,* that the person thus employed was not a partner in the business, even in respect to third parties.

ASSUMPSIT, tried before KENT, C. Judge, at the New-York circuit in January, 1843. The action was on a written agreement made the 2d day of March, 1841, between the plaintiff of Oswego of the one part, and Messrs. James Gibb & Co. of Quebec of the other part. By the contract the plaintiff agreed to purchase wheat in Ohio during the year 1841, at as low a price as possible, to the extent of 200,000 bushels, and ship the same to Oswego. The expenses incurred were to be added to the cost of the wheat, and certain premiums were to be deducted. The plaintiff agreed to furnish a barrel of flour of a certain quality for every five bushels of 60 pounds of wheat, and to deliver the same at Kingston, U. C., to the agents of Gibb & Co. On such delivery, Gibb & Co. agreed to pay the plaintiff for each barrel of flour the amount of the cost of five bushels of wheat, including freight. Gibb & Co. were then to sell the flour in Canada, charging only actual expenses. The net profits arising from the sale of the flour were to be divided between the plaintiff and Gibb & Co. in the proportion of one-third to the former, and two-thirds to the latter.

James Gibb & Co. were partners in business at Quebec, L. C., and the firm was composed of James Gibb, Thomas Gibb, and Elisha Lane. They were made defendants with Eckart. Whether they had been served with process or not, was not stated ; but Eckart alone defended ; and one question was,

whether he could be made liable with Gibb & Co. upon the contract. *Christian J. Burckle*, the father of the plaintiff, and who transacted most of the business on his behalf, testified that the signature to the contract "James Gibb & Co." was written by James Gibb, one of the firm : and that he first made the acquaintance of Eckart in 1840, when he was engaged in purchasing flour. In consequence of some conversations which had previously passed between the witness and Eckart, the witness on the 8th of February, 1841, wrote a letter in the plaintiff's name, directed to "Isaac R. Eckart, Esq., or in his absence, to Messrs. James Gibb & Co. Quebec," as follows—"*Dear Sir :* Being now at liberty to make what arrangements I please respecting my milling business for the ensuing season, I herewith address you suggestions to form the basis of an arrangement I should like to enter into with a Canadian house of the standing of Messrs. Gibb & Co., and have no doubt it would prove mutually convenient and advantageous," &c. This was answered by a letter from Eckart to the plaintiff, written at Montreal on the 19th of February, 1841, in which he says, "the terms for the arrangement you propose have been submitted to Messrs. James Gibb & Co. of Quebec. They think a commission should be allowed, to place them in the same position with yourself, as an equivalent to the milling profit. Mr. James Gibb, the principal of the firm, whom I expect here to-morrow on his way to Upper Canada, will visit your place in company with myself, when the basis you propose can be taken into consideration," &c. James Gibb and Eckart accordingly went to Oswego, where the written agreement was made and executed by the plaintiff of the one part, and "James Gibb & Co." of the other part. The witness further testified that when negotiating the contract, James Gibb informed the witness that Eckart had a share in the business ; and Eckart said it was so. Cross-examined : they merely said Eckart was interested—they did not say he was the purchasing agent of Gibb & Co. There was nothing said about Eckart's being a member of the firm of James Gibb & Co. ; and it was not said that he was a partner in that house. The plaintiff then read a stipulation by which the attorney of

Eckart admitted that the firm of Gibb & Co. at the time of the execution of the contract consisted of James Gibb, Thomas Gibb, and Elisha Lane.

On this proof the plaintiff proposed to read the contract in evidence. The defendant objected that there was no proof that Eckart was a member of the firm of Gibb & Co., or that he had executed the contract. The judge overruled the objection, and allowed the contract to be read in evidence, saying there was some evidence that Eckart was a party to the agreement; and the defendant excepted.

The defendant read the deposition of *Duncan McPherson* of Quebec, who was the book-keeper of Gibb & Co. He gave the names of the several members of the firm as they have already been mentioned, and said they were engaged in a general business as merchants, trading principally in groceries, wines, spirits, and provisions. He added, "James Gibb & Co. required somebody to attend to the purchasing and forwarding of western produce, and employed Isaac R. Eckart, the defendant, for that purpose; and as a remuneration for his trouble, he was to receive one-fourth of the profits coming to James Gibb & Co. from the western produce business. He acted in all matters connected with that business under the orders of James Gibb & Co., and exercised no kind of ownership over the produce; and he never was looked upon, or considered as a partner of the firm of James Gibb & Co." He was paid for his services by receiving one-fourth of the profits arising out of the western produce business; but had no further interest in the firm or business of Gibb & Co. In 1840 Gibb & Co. were also engaged in the western produce business, and Eckart was employed, and paid for his services in the same way.

The plaintiff purchased wheat, manufactured and sent 11,485 barrels of flour to the agents of Gibb & Co. at Kingston, which was received and paid for by Gibb & Co. in pursuance of the agreement. The plaintiff also sent 1350 barrels more, which Gibb & Co. refused to receive; and on the 16th of October, 1841, Gibb & Co. wrote the plaintiff that they would proceed no further under the contract. For this alleged breach the ac-

tion was brought; and the plaintiff claimed to recover such profits as he would have made had there been a complete performance of the agreement. The defendant insisted that the contract was first broken by the plaintiff, and that Eckart was not a partner of Gibb & Co. The judge charged the jury, the defendant excepted, and the jury, without retiring, rendered a verdict for the plaintiff for $17,170,60. The defendant Eckart moves for a new trial on a bill of exceptions.

*M. S. Brewster & G. Wood,* for the defendant, cited 2 *Caines,* 298; 17 *John.* 80; 1 *Wend.* 532; 5 *id.* 274; 24 *id.* 158; 19 *id.* 424, 428; 13 *East,* 7; 5 *Taunt.* 74; *Story on Partn.* 60, 62, 56, 7; *Gow,* 19, 21; *Id.* 100.

*F. B. Cutting & S. Stevens,* for the plaintiff, cited 18 *Wend.* 184; *Story on Partn.* 49, 69, 51, 54, 23, 58; *Coll. on Partn.* ch. 1, § 2; 3 *Kent,* 24—7; 16 *John.* 34; 1 *Hill,* 526; 6 *Serg. & Rawle,* 261; 6 *Pick.* 374; 16 *id.* 425; 2 *H. Bl.* 235, 246; 3 *Maule & Selw.* 357; 4 *Barn. & Ald.* 663; 18 *Vesey,* 300; 24 *Wend.* 158; 19 *id.* 424, 428, 30.

*By the Court,* BRONSON, Ch. J. The contract on which the plaintiff sues is in writing. Eckart has not signed, and is not bound by it, unless he was a member of the house of James Gibb & Co.; and that he was a member was not proved at the time the judge allowed the contract to be read in evidence. The plaintiff himself proved, by reading the stipulation made for that purpose, that the firm of James Gibb & Co., at the time of the execution of the contract, consisted of James Gibb, Thomas Gibb, and Elisha Lane. If this proof was not absolutely fatal to the action, still there was no satisfactory evidence that Eckart was a partner. The witness Christian J. Burckle testified, that when negotiating the contract, James Gibb said, Eckart had a share in the business; and Eckart said it was so. According to the cross-examination, they merely said, that Eckart was interested: they did not say that he was a member of the firm, or a partner in the house of James Gibb & Co

This is the strongest evidence—indeed, all the evidence there was at that time, tending to charge Eckart as a partner.    There are many ways in which he might be interested in the business to which the contract related, without being a partner; and the witness, who is the father of the plaintiff, and seems to be a principal, rather than a subordinate, on that side of the case, does not pretend that he thought Eckart a partner, or supposed he would be bound by the contract of James Gibb & Co.    It is evident from the correspondence which brought the parties together, that Eckart was not regarded as a partner.    And besides, there was then no motive for wishing to bind him ; for, as the witness tells us, he had failed in business, and Gibb was rich. The evidence was quite too loose and inconclusive to charge Eckart; and the first exception was well taken.

This difficulty was not obviated by the proof which afterwards came out touching the alleged partnership.    The testimony of Duncan McPherson shows precisely what was the real relation between Eckart and the house of Gibb & Co.; and as his testimony is entirely consistent with all the other evidence in the case touching that subject, we need not look beyond what he has said.    Now, according to his evidence, Eckart was not a member of the house of Gibb & Co.    But as the house required assistance in the out-door part of their business, they employed Eckart to attend to the purchasing and forwarding of western produce ; and, as a remuneration for his trouble, he was to receive one-fourth part of the profits coming to Gibb & Co. from that branch of their business.    He acted in all matters connected with the business under the orders of Gibb & Co. He exercised no ownership over the property purchased; and was never looked upon or considered as a partner.    It is quite clear that there was no partnership as between the parties to this arrangement; and I think there was none in relation to third persons.    There was no community of interest in the capital stock: and Eckart did not act as a principal trader, but only as the agent or servant of Gibb & Co.    He was not clothed with the usual powers, rights, or duties of a partner; but was subject to the orders of his employers.    He had nothing to do

with losses, except as they affected the profits out of which he was to be paid; and he was only to take a share of the profits in the lieu of wages, or as a mode of getting compensation for his services. I shall not go over the cases where this question has been considered, nor examine the nice distinctions which may be found in the books; for, so far as this court is concerned, it has been settled, that a mere agent or servant, who is to obey orders, and has no interest in the capital stock, will not be a partner, even as to third persons, merely because he is to be compensated for his services, by receiving a share of the profits which may arise from the business in which he is employed. (*Vanderburgh* v. *Hull,* 20 *Wend.* 70. *And see Story on Partn.* 49, 56, 72; *Collyer on Partn.* 14, 18.) It is undoubtedly true as a general rule, that a communion of profits will make men partners, and draw after it a liability for losses. But it is abundantly settled that the rule is not universal: and the exception which will best reconcile the cases, is least liable to abuse, and is so distinctly marked that it can be easily administered, is that which allows one man to employ another as a subordinate in his business, and agree to pay him out of profits, if any shall arise, without giving the party employed the rights, or subjecting him to the liabilities of a partner.

There was no conflict of testimony. It is true that Eckart was interested in the business; but not as a partner. As there was no dispute about facts, the counsel was right in insisting as matter of law, that Eckart was not a partner; and the judge should have so charged the jury.

There are several other questions in the case; but as this goes to the foundation of the action, they need not be considered.

New trial granted.