## BURCKLE *vs.* ECKHART and others.

Where a contract is made at one place and is to be performed at another, the cause of action upon such contract arises at the latter place.

Therefore, where by a contract made at Oswego (within the fifth circuit) the complainant was to manufacture flour at that place, and deliver it to the defendants in Canada, where they resided, who were to dispose of it there and account for the net profits, and a bill was filed before the vice chancellor of the fifth circuit for an account; *held*, that the *cause* or *matter* did not arise within that circuit so as to give the vice chancellor jurisdiction.

And *held further*, that jurisdiction was not acquired on the ground that the subject matter of the controversy was situated within the circuit. The subject matter in such a case has no locality within the meaning of the statute defining the jurisdiction of the vice chancellor.

In order to give a vice chancellor jurisdiction on account of the cause or matter having arisen within his circuit, it must have arisen there *exclusively*.

Where a bill was filed before a vice chancellor against persons not residing within his circuit, and the defendants voluntarily appeared, and then suffered the bill to be taken as confessed for want of an answer; *held*, that such appearance did not confer jurisdiction.

When the cause or matter does not arise, and the subject matter of the controversy is not situated, within the circuit of a vice chancellor, the residence of a defendant therein is a jurisdictional fact, and where that is also wanting the mere appearance of the defendant does not cure the defect.

A person employed by a firm and receiving a given share of the profits as a compensation for his services, but having no community of interest in the capital stock of the concern, is not liable as a partner.

A mercantile house engaged in general business, and trading among other things in provisions, employed a person to attend to the purchasing and forwarding of produce, who was to act under the orders of the firm, and have, as a com-

Burckle *v.* Eckhart.

pensation for his services, one fourth of the profits arising out of the purchase and sale of the produce; *held,* that the person so employed was not a partner in the business even in respect to third parties.

APPEAL from the supreme court, where Burckle brought an action of assumpsit against James Gibb, Thomas Gibb, Elisha Lane, and Isaac R. Eckhart. The suit was upon a contract made March 2, 1841, between the plaintiff, of Oswego, of the one part, and James Gibb & Co. of Quebec, of the other part. The cause was first tried in January, 1843, when the plaintiff had a verdict which was set aside by the supreme court and a new trial granted. The facts as they appeared on that occasion are stated in the report of the case. (1 *Denio,* 337.) There was another trial in November, 1845, and the plaintiff again had a verdict which was also set aside by the supreme court. (*See* 3 *Denio,* 279.) The cause was last tried before Justice H. GRAY at the New-York circuit, in December, 1847, and in addition to the facts proved on the first trial, the plaintiff, for the purpose of proving that the defendant Eckhart was one of the parties of the second part to the contract in question, offered in evidence an exemplified copy of the proceedings and decree in the court of chancery before the vice chancellor of the fifth circuit, in a cause between the parties to this suit, the plaintiff being complainant. The bill described the plaintiff as a resident of Oswego in this state, and *the defendants as residents of Quebec,* in Lower Canada. It set out the agreement declared on in this suit, which it averred was *executed* by the *defendants,* by and under the style, name, and firm of *Gibbs & Co.* The object of the bill was to compel the defendants to account for the profit of a quantity of flour, which the plaintiff had delivered at Kingston, pursuant to the contract. It was taken as confessed, for want of an answer; the defendants *having appeared* by a solicitor. The decree, which was entered on the 20th of May, 1845, declared that *all the defendants* entered into the contract as *members* of the *firm* of *James Gibbs & Co.,* and that the parties proceeded to the execution of its provisions, until Oct. 1841; when the defendants refused to receive any more flour, or perform on their part; the complainant

having fully performed on his part; that the defendants were indebted to the complainant in the sum of $3539,48, for one third the net profits of flour accepted and sold in Canada by the defendants; which the latter were decreed to pay with costs. This evidence was objected to, on the ground that the vice chancellor of the fifth circuit had no jurisdiction of the *matters* stated in the bill; and the evidence was received by the judge subject to the objection.

After the testimony upon *both sides* had been given, the defendant Eckhart (upon whom *alone* process had been served,) moved for a nonsuit, 1st, upon the ground that the decree was not evidence to go to the jury, for the reason above alledged; and 2d, because upon the *whole evidence*, Eckhart was not shown to be *a partner* with the other defendants. The nonsuit was granted, and the plaintiff excepted. The supreme court sitting in the first district refused to set aside the nonsuit, and after judgment the plaintiff appealed to this court. The contract in question is sufficiently referred to in the opinion of the court.

*G. Wood*, for appellant.

*H. Denio*, for respondents.

GARDINER, J. Two questions are presented in this case—1st. Had the vice chancellor of the fifth circuit jurisdiction to make the decree received in evidence upon the trial? and if not, 2d, whether Eckhart is shown prima facie, to be one of the firm of Gibbs & Co. by the other evidence in the cause? The statute (2 *R. S.* 168, § 2,) declares, that every circuit judge within the limits of his circuit, shall, concurrently with the chancellor, have, and exercise, all the original jurisdiction, and powers, vested in the chancellor, in all causes, and matters in equity, when such *causes* and *matters* shall have *arisen* within the circuit of such judge. The 2d and 3d subdivisions of the section above quoted are not applicable, and may be laid out of consideration. And the inquiry is, whether the causes and matters in contro-

Burckle *v.* Eckhart.

versy between these parties, and in reference to which relief was sought in equity, arose in the fifth circuit.

The contract was executed at Oswego, but the duties and obligations imposed by it upon Gibbs & Co., for a violation of which the bill was filed, were to be performed and discharged in Canada, with a single exception. The flour, after the manufacture, was to be delivered at Kingston, to the agents of Gibbs & Co., who were then to advance to the plaintiff the cost at that place, including all charges for freight; it was to be sold in Canada by Gibbs & Co., the accounts were to be kept there, a partial adjustment of the profits and losses was to be had from time to time, if required, and a "final settlement (in the language of the agreement) and close of accounts to be made at the end of the year 1841, and balances paid, as they appear respectively due by the parties, from one to the other: Gibbs & Co. having a share of two thirds, and the plaintiff one third of the same." All these provisions, in terms, or by necessary implication, refer to Canada, as the place where the business was to be transacted. The fair inference from the contract is, that the payments of balances, by the respective parties, were to be made at the place where those balances were ascertained. This would be at the place of business of the copartnership, where the accounts were kept. The share of the losses, to be provided for by the plaintiff, were to be paid to Gibbs & Co. who, by the contract, were to advance the cost of the flour at Kingston, and who of course would sustain in the first instance, the loss arising from its depreciation. It certainly is not probable that the parties contemplated the payment of the profits in one country, and the losses in another, particularly as upon the final settlement they were to be paid *when* and of course *where* the balance was ascertained. If this is a correct view of the agreement, its performance by Gibbs & Co. was to be regulated according to the laws of Canada, and the balances, when ascertained, were to be paid there, with the interest authorized by those laws, and not according to the laws of the United States. (2 *Kent,* 460; *Story's Conflict of Laws,* § 284; *Andrews* v. *Pond,* 13 *Peters,* 77, 78.)

It is true, the contract was made at Oswego, and within the 5th circuit. It is also true, that it is the foundation of the plaintiff's claim : but the place of its execution is not a *cause* or *matter* in equity, or any part of it, in controversy between these parties, entitling the plaintiff to relief. Indeed, the fact is not alluded to in the bill.

By the seventh clause of the agreement, weekly statements were to be furnished by the plaintiff of his purchases of wheat, and by Gibbs & Co. of the receipts and sales of flour. A breach of the contract in this respect, by the defendants, is alledged in the bill, and it is insisted that it occurred in the fifth circuit, where the plaintiff resided. It may be doubted whether the agreement contemplated any thing more than that an account of sales and purchases should be forwarded to the parties respectively, by the ordinary modes of conveyance. But if those who were to furnish the statements were bound to guaranty their reception, and the defendants were therefore held to a performance of this part of their contract, at the plaintiff's residence, this fact would not give the vice chancellor jurisdiction. His jurisdiction must be exclusive of any other vice chancellor, when the causes or matters have arisen in his circuit. (2 *R. S.* 163, §·2.) This must refer to *all* the matters in controversy, or so much of them as will enable the court to execute full and complete justice between the parties, and determine all further litigation.

If a breach of the same contract should occur in different circuits, it was not the intention of the legislature that the jurisdiction should be divided. For the vice chancellor, when he acquires, exercises jurisdiction, exclusive of all others. (*Brown* v. *Brown,* 1 *Barb. Ch. Pr.* 215, 216 ; 8 *Paige,* 443.) Here an important part of the contract was to be performed at Oswego, but the default of the defendants, upon which the plaintiff has rested the whole equity of his bill, occurred in a foreign jurisdiction. The bill should therefore have been filed before the chancellor. It is immaterial whether the matters arose abroad, or in a different circuit in this state. The statute re-

Burckle *v.* Eckhart.

quires that they shall arise within the circuit of the judge claiming to exercise jurisdiction.

It was said, that if either of the defendants had resided in the fifth circuit, the court would have had jurisdiction, and that by appearing they waived that defect. The jurisdiction of courts is conferred by law, and in no case by consent of parties. When jurisdiction of the subject and *person* is required as a prerequisite to judicial action, a defendant may waive any irregularities in the mode by which his person is sought to be subjected to the jurisdiction of the court, by a voluntary appearance. He may dispense with the service of process, as he may waive any other personal privilege. But when the defendant is in court as a party, the *law* gives jurisdiction of the person, without regard to the question whether his appearance was voluntary or by compulsion. This is all that is meant by consent giving jurisdiction of the person, and all that is decided in the cases to which we have been referred. (*Bents* v. *Graves*, 3 *McCord's R.* 280; *Overstreet* v. *Brown*, 4 *id.* 80.) The residence of a defendant within the limits of the circuit, according to the 3d subdivision of 2d section of the statute above quoted, is a jurisdictional fact which must exist before the court can act at all, either by issuing process or accepting the appearance of a defendant. It is necessary to give jurisdiction of the cause, not of the person. In such case there can be no waiver. (3 *McCord*, 280.) It is true, that where a particular matter, essential to jurisdiction, is averred by one party, it may be admitted or denied of record by the other. When denied it must of necessity be determined by the court upon proof, like any other question of fact. (6 *Wend.* 332, *and cases; id.* 447.) It is the "matter," however, itself, of which the record and proof are the evidence, which is the ground of jurisdiction. The plaintiff in his bill, in this case, alledges that the defendants were nonresidents, and the latter appear and confess the fact. The want of jurisdiction, as to this point, appears upon the record. We think, therefore, that the enrolled decree was not evidence for any purpose against the defendants.

2. Was Eckhart shown, by the other evidence in the cause, to
VoL. III.          18

be a member of the firm of Gibbs & Co. ?    This point was fully considered when this cause was before the supreme court, after the first trial.  (1 *Denio*, 341, 2.)  I concur fully in the reasoning and conclusions reached by the learned judge who delivered the opinion of the court.   The distinction between an interest in the profits, as such, and the payment of a sum in proportion to a given quantum of the profits, is to be taken with the qualification that, in the first instance, the stipulated share of the profits are received by individuals in the character of partners, and not as agents, or as a compensation for services.  (*Coll. on Part. by Perkins*, 3d *Am. ed.* 33, 34, 37, *note; Loomis* v. *Marshall*, 12 *Conn.* 69 ; 20 *Wend.* 70.)  This is true as between the parties themselves, whatever may be the effect as regards third persons.

. The judgment of the supreme court should be affirmed.

SHANKLAND, J. dissented.  He was of opinion that a new trial should be granted, and the evidence submitted to a jury to decide, whether Eckhart held himself out to the plaintiff as a partner or co-contractor with James Gibbs & Co., and whether the plaintiff was induced to contract, and did so, on that hypothesis.   Such, he said, should be the judgment of this court, even if the court should think that the defendants were not partners *inter se*, nor as to third persons in general, because if Gibbs and Eckhart so acted and talked, in the presence of the plaintiff, at the time of making the contract, as to induce a reasonable man to believe they were partners, although all the rest of the world knew they were not, yet as to him they are liable as such. (*Hoare* v. *Dawes, Doug. Rep.* 371 ; *Cooper* v. *Eyre*, 1 *H. Black.* 37 ; 9 *Bing.* 297 ; *Dickenson* v. *Valpy*, 10 *B. & C.* 140 ; 1 *Smith's Lead. Cas.* 729.)

Upon the question whether there was in fact a partnership as to third persons, the judge proceeded as follows.  "But a full examination of the cases has satisfied me that the facts sworn to by Duncan McPherson constituted Eckhart a partner of the firm of Gibbs & Co., in respect of that branch of their business, which he calls *the western produce business,* as between the said de-

fendants *and third persons dealing with them in that particular business.* The contract proved by him is that James Gibbs & Co. employed Eckhart to purchase and forward western produce, and it was agreed that he should have one-fourth of the profits arising from said business, as a remuneration for his trouble; that he acted in all matters connected with that business under the order of James Gibbs & Co., and exercised no kind of ownership over the produce, and never was *looked upon* or *considered* as a partner of the firm. That Eckhart was not *considered* as a member of the firm, has no bearing upon the case. That is a question of law upon ascertained facts. Nor is it of importance to the decision of this cause, that Eckhart in fact acted in *pursuance of orders from Gibbs & Co.* It is not pretended that it was a part of the *contract*, that he should be subordinate, if that would alter the law of the case. This contract allowed Eckhart to participate in the *profits* of the branch of business in which he was engaged, and made him liable, as between himself and Gibbs & Co., to the loss of his time, labor and expenses, if no profits were made. He was entitled to one-fourth of the profits *specifically*, and would be entitled to an account of those profits, and to hold them as against the separate creditors of either, or all of the other members of the firm. (*Dob* v. *Halsey*, 16 *John.* 40; *Gouthwaite* v. *Duckworth*, 12 *East*, 421; *Pott* v. *Eyton*, (*T. Term*, 1846,) 54; *Eng. Com. Law Rep.* 32.) In this last case Tindal, Ch. J. lays down the rule thus: "Traders become partners between themselves by a mutual participation of *profit* and *loss;* but as to *third persons* they are partners if they share the *profits* of a concern; for he who receives a share of the *profits*, receives a part of that fund upon which the creditors of the concern have a right to rely for payment, and is therefore to be made liable for losses, although he may have expressly stipulated for exemption from them." (*See* 1 *Smith's Lead. Cas.* 726; 18 *Wend.* 175; 4 *East*, 144.) *Barry* v. *Nesham*, 3 *Manning, Granger & Scott*, 641, *is in point.* The above rule has been long established by adjudications in England and in this state, and should be adhered to by us.

The reason that a dormant partner is made liable for the debts of the firm, is not that the goods were sold, or the debt contracted wholly, or in part, upon his credit; but only because he participates in the profits of the concern, and abstracts so much from the fund which is in equity due to the creditors. And it is for the same reason that a person who participates in those profits is made liable to creditors, although he contributes nothing to the fund but his services; and who is not a general partner because he does not share in the losses. The above rules are based on great and sound principles of public policy, and the courts ought not to depart from the English doctrine which holds a person liable to the debts of the firm, if he takes a share of the profits, although he takes them as a compensation for services, unless they are prepared to release a dormant partner from his responsibility also. It was never thought to make a difference that the share of the profits stipulated for were great or small. A dormant partner who receives a tenth of the profits, is held responsible in the same degree as the one who receives nine-tenths. Nor should the person who receives of the profits, *as profits*, of a concern, any amount, although in the name of wages, or compensation for services, be exempt from a similar liability to the creditors. The reason of the rule is the same in both cases, and the consequences should be the same. The following English authorities, commencing with *Waugh* v. *Carver et al.* in 1795, and ending with *Pott* v. *Eyton* in 1846, will show with what regularity the line of decisions has been sustained in their courts. (2 *H. Black.* 235; *Ex parte Hamper*, 17 *Ves.* 403; *Ex parte Langdale*, 18 *id.* 300; *Ex parte Watson*, 19 *id.* 459; *Myers* v. *Sharpe*, 5 *Taunt.* 74; *Cheap* v. *Cramond*, 4 *B. & Ald.* 663; *Smith* v. *Watson & Lock*, 2 *B. & C.* 401; *Reid* v. *Hollingshead*, 4 *id.* 867; *Chuck, ex parte*, 8 *Bingh.* 469; *Green* v. *Beesley*, 2 *Bingh. N. C.* 108; *Ex parte Digby*, 1 *Deacon*, 341; *Pott* v. *Eyton*, 3 *Mann. Granger & Scott*, 33.)

The first case in our own courts, in which the subject is noticed, is *Muzzy* v. *Whitney*, (10 *John.* 226,) in which it was held that where the defendants agreed with the plaintiff " to let

Burckle *v.* Eckhart.

him have the share of the profits, if any, in making the second ten miles of the Chenango turnpike road, in proportion to the help he afforded in completing the same, the one half to be taken from the part of each defendant," there was no partnership *inter se.* But the court based their decision on *Hasketh* v. *Blanchard,* (4 *East,* 144,) and other cases, which clearly decide that they would be holden as partners, quoad third persons. In *Dob* v. *Halsey,* (16 *John.* 34,) it was held that where one Moore agreed to superintend the saw-pits and lumber yard of the plaintiffs for one year, in consideration of his receiving one-third of the net profits, he was a partner, not only as to third persons, but also *inter se.* The case of *Champion* v. *Bostwick,* (18 *Wend.* 175,) is a direct authority in favor of the principle, that where one is paid for his services by a share of the profits, according to the English rule, he is a partner as to third persons. In *Cushman et al.* v. *Bailey and Conkling,* (1 *Hill,* 526,) it was decided that where C. loaned to B. $1000 for a year, and leased him a store for the same period, and stipulated that his son should attend the store as B.'s clerk without specific compensation; in consideration of which B. agreed to invest $3000 in the store, conduct it during the year, and at the expiration thereof repay the $1000 and surrender the premises, if required, accounting for the business done, and render to C. one equal third of all the *profits,* &c. the agreement constituted a partnership as to *third persons.* Here too the English rule is fully recognized.

The case of *Vanderburgh* v. *Hull and Bowne,* (20 *Wend.* 70,) is one where one Sherwood was called by Hull and Bowne, the plaintiffs, to prove their demand against the defendant, and on his *voir dire* disclosed that he was employed as the agent of the plaintiffs, in a foundry conducted by them, at an annual salary of $300, and in addition to that, one-third of the profits of the foundry, if any were made, but had nothing to do with the losses. The plaintiffs found the capital, stock, &c. and he gave his services. The defendant objected to the witness on the ground of *interest,* and also that he should have been joined as co-plaintiff. Mutual releases were then executed between the plaintiffs and witness, and he was allowed to testify. The

supreme court, on a bill of exceptions, decided that Sherwood was not a partner, because he was not liable for losses—because the share of profits was intended as payment for the labor of the witness; and the cases in 5 *Taunt.* 74, 2 *H. Black.* 590, and 1 *Camp.* 331, were cited as in point. In the first case cited by Justice Nelson, it was conceded by both counsel and court, that the parties in that case were partners in the *profits,* though not in the *goods,* and of course would be liable to third persons. So in the other cases, a distinction is taken between being partners in the *goods* and partners in the *profits.* In the first case they are partners *inter se ;* in the latter not, except as to third persons.

I concede that the case of *Vanderburgh* v. *Hull and Bowne* was rightly decided, for the reason that the witness was not a partner of the plaintiffs, as *between themselves*—a proposition which the *defendant* should establish, before he could make the objection of non-joinder available ; because he was not *suing as a creditor of the firm,* and was not, therefore, in a position to raise the question. Only those who are partners *inter se* are bound to join in a suit, as plaintiffs, to recover a debt due them. (*Teed* v. *Elworthy,* 14 *East,* 209 ; *Atkinson* v. *Laing,* 1 *D. & E.* 16.) And in this respect I cannot but think the supreme court erred in deciding the case of *Dob* v. *Halsey.* In that case Moore had no joint interest in the timber sued for, nor was he responsible for losses, *as between himself and the plaintiffs.* He was a partner in the *profits* only, but *inter se,* they were not partners within the English rule.

It was not the intention of the court in *Vanderburgh* v. *Hull and Bowne,* to establish a new rule, as to what facts constitute a partnership between partners and third persons, nor to innovate upon the old one ; nor did the facts of that case, and the point to be decided, call for the consideration of the question arising on this record. I therefore respectfully dissent from the remark of the learned justice in *Burckle* v. *Eckhart,* (1 *Denio,* 342,) that "so far as that court was concerned, it had been settled that a mere agent or servant who is to obey orders, and has no interest in the capital stock, will not be a partner, *even as to*

*third persons,* merely because he is to be compensated for his services by receiving a share of the profits which may arise from the business in which he is employed." That court decided directly the other way in *Dob* v. *Halsey,* (16 *John.* 34; *Cushman* v. *Bailey,* (1 *Hill,* 526 ;) *Bostwick* v. *Champion,* (11 *Wend.* 580 ; *S. C. in court of errors,* 18 *id.* 184, 5, *opinion of Walworth, Ch.*) In this last case Mr. Justice Nelson admits that the proprietors of the stage line were not partners, *inter se,* but holds them so as to third persons, *because they shared in the profits.*

The private arrangement existing between Gibbs and the other members of his firm was unknown, and immaterial to the plaintiff at the time the contract was made. If Gibbs conceived the services which Eckhart contributed to the common stock equal to money, he had the right to do so. The law so esteems it ; and if Eckhart was to act a subordinate part to the head of the firm, in the management of the joint interest, it does not in the least affect the question. Two things are certain, he was actively engaged in purchasing and forwarding western produce, (including the very purchase on which this suit is founded,) and was entitled to one-fourth of the profits coming from that business. There is not a case in the books, either English or in this state, which hold such a case not a partnership, as between the vendor of property and persons thus purchasing. In addition to the above facts Gibbs declares to the plaintiff, at the time of the purchase, " that Eckhart had a share in the business," and Eckhart replied " that it was so." This remark must have been understood by the plaintiff to mean that Eckhart had a share in the business then transacting, or why such a remark at that time ? If an authority is needed to show that a declaration made at such a time, should be taken *secundum subjectam materiam,* it will be found in the judgment of Lord Kenyon, in *De Berkom* v. *Smith,* (1 *Esp. N. P. C.* 29.)

For the above reasons the judgment should be reversed and a new trial directed.

Judgment affirmed.