DAVIES, Ch. J., and WRIGHT, J., did not concur.

Judgment affirmed, with costs. .

---

## WRIGHT *v*. AMES.

December, 1865.

Although, every member of a firm, is, in a sense, a general agent of the firm, a firm is not necessarily the agent, general or special, of any other firm in which either of its members is a partner.

A firm of warehousemen delivered to third persons, as being the property of L. wheat belonging to a firm of merchants, and the latter sued the transferrees for conversion. *Held*, that the fact that L. was a member of both firms, was no defense.

Luther Wright, as assignee of the firm of J. & I. Lewis, brought an action against Henry M. Ames and others, constituting the firm of Ames, Howlett & Co., for the conversion of personal property.

The facts are as follows: In 1856, William Lewis, a silent partner in the firm of J. & I. Lewis, and also a partner in the firm of Rathbun & Lewis, was the owner of several cargoes of wheat, which were stored in the Empire Elevator, owned by Rathbun and Lewis. Among these cargoes was that of the schooners S. J. Holley, and Northern Belle.

The defendants made advances to William Lewis, and as security, took a transfer of his wheat to be sold by them on commission, and the avails applied on their advances, and took the

warehouse receipts in their own name, by which it was declared that the wheat was held in store subject to their order.

On and before December 19, 1856, William Lewis, without the knowledge or consent of the defendants, took from the cargo of the Holley, two thousand one hundred and fifty bushels, and from the cargo of the Northern Belle, one thousand bushels, and appropriated them to his own use.

All the residue of his wheat was from time to time delivered from the elevator on the orders of the defendants.

During the same month of December, J. & I. Lewis were owners of cargoes of wheat also stored in the Empire Elevator, on which the defendants had made advances in the same way as upon the wheat of William Lewis. On May 14, 1857, the defendants, by a written order, addressed to the Empire Elevator, directed the delivery, to Ames & Sloan, of two thousand six hundred and twenty-four bushels of the cargo of the Holley. Upon this, the elevator delivered four hundred and seventy-four bushels of the cargo named, which exhausted the same, and two thousand one hundred and fifty bushels of wheat belonging to J. & I. Lewis. On May 18, the defendants by a like order, directed the delivery of one thousand bushels of the cargo of the Northern Belle to Ames & Sloan, and there being no part of that cargo left in store, the quantity was delivered from the grain of J. & I. Lewis. Ames & Sloan sold the wheat received on these orders, on account of defendants, and the proceeds were credited by defendants to William Lewis.

The defendants accounted to J. & I. Lewis for all the wheat pledged by that firm to them, except the two above mentioned quantities, and on May 21, 1857, J. & I. Lewis paid defendants the amount found to be due them.

The claim was assigned to the plaintiff, who brought this action.

The referee having found these facts gave judgment for the plaintiffs for the value of the two parcels.

*The supreme court*, at general term, affirmed the judgment. Their opinion went upon the ground that William Lewis had taken the wheat of J. & I. Lewis to pay his private indebtedness, and that it was, in fact, an attempt by one partner to

pay his precedent, individual debt, by a transfer of the effects of the copartnership. That the cases which sustained the act of one partner in disposing of the partnership effects to discharge his private debts, were those where the transfer was made for a valuable consideration received at the time the property was parted with ; but that in this case the only consideration for the transfer being a precedent debt, which did not constitute a valuable consideration to operate to defraud a third party, the defendants acquired no title to the property.

Defendants appealed.

*George F. Comstock,* for defendants, appellants.

*W. F. Allen,* for plaintiff, respondent.

DAVIS, J.—When the defendants drew their orders on the Empire Elevator for the delivery to Ames & Sloan of two thousand six hundred and twenty-four bushels of the cargo of the S. J. Holley, and one thousand bushels of the cargo of the Northern Belle, there was none of the latter, and but four hundred and seventy-six bushels of the former remaining in store. The deficiency had long previously been surreptitiously taken out by Wm. Lewis; and Rathbun & Lewis, the owners of the elevator, committed an additional fraud by delivering to Ames & Sloan, who were the agents of defendants, three thousand one hundred and fifty bushels of the wheat of J. & I. Lewis.

There was no pretense of a sale of this wheat, for a valuable consideration, to defendants. It was delivered to them simply as a part of the wheat which they held as security for the indebtedness of William Lewis, and not upon a purchase and sale from Rathbun & Lewis or William Lewis, nor upon any new consideration whatever. Ames & Sloan received this wheat to sell on commission for defendants, and, having sold the same, paid over the proceeds to them. It is difficult to conceive any principle upon which this process can be held to have changed the ownership of the wheat. Grant that defendants were in total ignorance of the fact that the wheat delivered was the property of J. & I. Lewis, their want of knowledge, and consequent innocence of design to obtain that wheat,

could have no effect upon the title. The wrong which injured them had long before been perpetrated, and its consequences are not to be shifted on to other shoulders because dishonest warehousemen have delivered to them the property of others where they demanded their own. Nothing but the assent of J. & I. Lewis that their wheat might be substituted and delivered for that wrongfully taken could have the effect to change the title of the property. The referee has failed to find any such assent, but, by his conclusions of law, if not by an express finding of fact, has necessarily negatived its existence. But it is argued, in substance, that, from the facts found, the law, by necessary implication, declares this assent, and, consequently, the legal conclusion of the referee is wrong. To this position the point must be reduced, because the defendants failed to ask for any express finding in their favor on this question, and to except to any omission or refusal so to find.

The fact out of which this implication must grow, if at all, is, that William Lewis was a member both of the firm of J. & I. Lewis, and of the firm of Rathbun & Lewis, and it must be established that the act of the latter firm, though greatly to the prejudice and injury of the former, derives the impress of their assent from this relationship of William Lewis to both firms. It nowhere appears that William Lewis acted personally in the delivery of the wheat in question, nor that he assumed to act as a member of or on behalf of the firm of J. & I. Lewis in such delivery. On the contrary, the findings indicate that the wheat was delivered by Rathbun & Lewis, and the evidence shows that the delivery was made by the servants of that firm without the personal intervention of William Lewis. Every member of a firm is in a certain sense the general agent of the firm ; but it has never been held, I think, that every firm is the agent, general or special, of every other firm of which either of its members is also a member. Such a doctrine would be no less novel than dangerous, and should not be announced by this court without a clear line of authority requiring it. When, therefore, Rathbun & Lewis assumed to deliver the property of J. & I. Lewis to make up a deficiency which their wrongful act had created, that firm were not agents of the owners of the property without an express authority. The law could imply

none from the fact that one of their members was also a partner in the firm of J. & I. Lewis, because, in making the delivery, they acted as a firm standing upon its own rights, and not as agents of another copartnership; because as a firm they were not members of the owner's firm; and because the individual who was such member did not assume to act on his own behalf, nor upon the agency for the other firm, which his relationship to them conferred upon him.

We are not, therefore, in my judgment, called to pass upon the question as to what would have been the effect, if Wm. Lewis had taken the wheat of J. & I. Lewis from the firm of Rathbun & Lewis, and delivered it to defendants on his private indebtedness; for no such state of facts is found or proved. Even in that case it would be difficult to uphold defendant's title, whatever rights equity might secure to them in the ultimate interest of William Lewis in the property. 3 *Kent Com.* 40; *Story on Agency*, § 124; 1 *Bouv. Inst.* 104; *Colly. on Part.* § 503; *Story on Part.* § 133; Rogers v. Batchelor, 12 *Peters,* 221; 3 *Pick.* 54; 16 *Johns.* 34.

The defendants also insist that J. & I. Lewis ratified the act of delivering their wheat to apply on William Lewis' debt to them, by the settlement of their account and the payment of the balance claimed against them. Here also the defendants are embarrassed by the fact that the referee has not only failed to find such ratification, and was not requested to find it, and an exception taken to his refusal; but also by a pretty distinct express finding and a necessarily implied one the other way. Certainly the referee could have given no judgment against defendants without necessarily holding that the act of applying the wheat to William Lewis' debt was not ratified by J. & I. Lewis; and, as this court is to uphold judgments by intendment when not contrary to facts found or proved, it would be going far to say that we should spell out a ratification from any evidence in this case in order to overturn the judgment. Besides, the referee has found the facts (which he mistakenly states as conclusions of law) "that there was no appropriation of the avails and proceeds of the sale to the credit of William Lewis, or to any purpose, by the authority of J. & I. Lewis, or by any agency binding on them," and "that the application of

the moneys realized from the sale of the wheat to the payment of the debt of William Lewis was unauthorized and in fraud of the rights of J. & I. Lewis."

The settlement was obviously made, I think, for the purpose of bringing the matter to a point where J. & I. Lewis, or their assignee, could demand the wheat or its proceeds discharged of any lien of the defendants; and there was no intent on the part of either party to cut off the claim, as it would have been inequitable to have done. It is not necessary or profitable to pursue the idea of ratification further.

The point that defendants should at least have been allowed to retain the supposed interest of William Lewis in the proceeds of the wheat is abundantly answered, I think, by the views above suggested, on the question whether he, either personally or as a member of the firm of J. & I. Lewis, transferred any such interest to defendants. No tortious act of Rathbun & Lewis could make the defendants joint tenants or tenants in common of J. & I. Lewis in property wrongfully converted; and hence this question is already sufficiently disposed of. Besides, it was not urged or raised below; and this court has repeatedly held that it does not sit to instruct parties as to how their causes could have been better tried.

I think the judgment should be affirmed.

A majority of the court concurred.

Judgment affirmed, with costs.