## Case No. 3,993.

### DONOVAN et al. v. DYMOND.

[3 Woods, 141.][1]

Circuit Court, D. Louisiana. April Term, 1878.

SHIPPING—PART OWNERS—INDIVIDUAL DEBTS—FREIGHT—JOINT LIBEL.

1. One of two part owners of a steamboat which is employed in the carrying business for their common profit cannot contract with a shipper to apply the freight earned in carrying his goods to the payment of an individual debt due

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

such shipper from such part owner, without the consent of the other.

2. The part owners may jointly maintain a suit in admiralty to recover the freight, notwithstanding such contract.

[Appeal from the district court of the United States for the district of Louisiana.]

This was a libel in a cause of contract of affreightment to recover the sum of $2,580 freight for carrying the goods of the respondent on the steamer Emma, for a period beginning November 28, 1876, and ending March 3, 1877. The vessel, during that time, was owned by Wm. Muller and Miss Jane Canton, and was commanded by Oliver Canton, Jr. It was admitted that the freight was carried, but it was contended, in the first place, that it was carried at a tariff rate somewhat lower than that charged in the bill, and the respondent claimed that it was settled for and paid by an arrangement made between him and Oliver Canton and his sister Jane Canton, whereby it was agreed that if he, the respondent, would advance money and indorse notes to enable Jane Canton to purchase one-half of the steamer, the amount so advanced should be credited on the freight to be carried for him by the steamer. This agreement was carried into effect, the respondent making the advances as agreed, and indorsing notes for the said Jane Canton, and the freight being carried for him in the vessel from and to his different plantations. The question was, whether an arrangement thus made by one of the part owners of a vessel, to credit the freight earned by the vessel in payment of his own indebtedness, was valid and binding on the other part owners, so as to prevent them or their representatives from collecting the freight.

B. Egan, for libelant.

J. D. Rouse and Wm. Grant, for respondent.

BRADLEY, Circuit Justice. Without stopping to inquire what a part owner might do in this direction, where he has the sole possession of the vessel and is running her on his own account, being responsible for her use to the other part owners, it is apparent that in this case no such state of things existed; the vessel was run and used for the mutual advantage of both the part owners; for, whilst Oliver Canton, as master of the vessel, may be considered as in some respects more properly to have represented Jane Canton, Muller was represented on the boat by the clerk, Donovan, who is now the receiver and libelant in this case. It was agreed that Muller should appoint a clerk to keep the books and otherwise to represent him in the steamer's transactions, and whilst Muller and Jane Canton, as part owners of the vessel, were not partners, yet, in conducting the business of carrying goods in the vessel for hire, they were in the strictest sense commercial partners, and the whole business of the boat was the subject of that commercial

partnership. It is further to be observed that Dymond, the respondent, was cognizant of the fact that the arrangement made between him and Jane Canton was for the private benefit of the latter, and not for the benefit of the partnership. The arrangement, therefore, was a fraud upon Muller, unless entered into with his consent, or subsequently ratified by him. It cannot be said to have been entered into with his consent for he knew nothing of the transaction until after the agreement was made.

It is claimed by the respondent that Muller was subsequently informed of it and acquiesced in it, and, as the case stood before the district court, there was strong evidence of that fact. Oliver Canton testified that when Muller, who resides in Vicksburg, came down to New Orleans to see about the boat, after he had heard of Jane Canton's purchase of one-half interest in her, he, Oliver Canton, informed Muller of the arrangement he had made with Dymond, and that Muller did not object to it; but since the decree of the district court was rendered, Muller has been sworn in reference to that point, and distinctly and positively denies that he was informed of the arrangement, or that he ever consented to it. Other evidence in the cause would seem to corroborate his assertion. It is hardly conceivable that he would give his assent to an arrangement that would practically subject the boat to the use of the other part owner, without any advantage to him. The burden of proof, that he acquiesced in the arrangement, rests upon the ·respondent, and the evidence to sustain it should be, at least, reasonably clear and satisfactory. I think it must be conceded that the arrangement in question did not have the consent, and never received the ratification of Muller. I conclude, therefore, that it was a fraud upon him.

The question still remains, whether an action can be maintained by Muller and his partner, Jane Canton, the latter having made the arrangement and being bound by it. There is a difference of opinion in courts of very high authority upon this subject. It was decided by the king's bench in England, in the case of Jones v. Yates, 9 Barn. & C. 532, that where one joint plaintiff is incapable of maintaining an action against a defendant, it is a defense against all; and although the result in such a case may be to defraud the other plaintiffs, yet, it was held that the action cannot be sustained because it would enable a plaintiff to recover who had precluded himself from the right of suing, and thus to rescind his own act. "The defrauded partner," said Lord Tenderdon, "may perhaps have a remedy in equity by a suit in his own name against his partner and the person with whom the fraud was committed. Such a suit is free from the inconsistency of a party suing, on the ground of his own misconduct."

This case has been followed by others. In Homer v. Wood, 11 Cush. 62, the question was elaborately discussed, and the decision in the case of Jones v. Yates, supra, was adhered to; but in New York, Pennsylvania and other states, a different rule has prevailed, and copartners have been permitted to recover against a separate creditor of one of their number whose debt has ·been settled with the partnership· funds, by the partner who owed him, the separate creditor having knowledge that the funds of the partnership were being used for that purpose. Chancellor Kent says: "It is a well established doctrine, that one partner cannot rightfully apply partnership funds to discharge his own pre-existing debts, without the express or implied assent of the other partner. This is the case even if the creditor had no knowledge at the time of the fact of the funds being partnership property." 3 Kent, Comm. 43. This was held to be the law in the case of Rogers v. Batchelor, 12 Pet. [37 U. S.] 221. See, also, Dob v. Halsey, 16 Johns. 34; Gram v. Cadwell, 5 Cow. 489; Evernghim v. Ensworth, 7 Wend. 326; Purdy v. Powers, 6 Pa. St. 492; Minor v. Gaw, 11 Smedes & M. 322, and see Colly. Partn. §§ 492–501, particularly section 501.

It seems to me that this is the true doctrine, otherwise, the separate creditors of one partner could, in collusion with him, defraud the partnership to any extent, and compel the other partners to go into equity for relief. Where such separate creditors are cognizant of the misappropriation of the partnership funds, it seems to me more just that they should be compelled to go into equity for relief, than that the innocent partners should be compelled to do so. If the separate creditors choose thus to deal with one of the partners, they run the risk of his ability to protect them by securing the assent of the other partners—a risk which they can always avoid by requiring such consent in advance. But whatever may be the true rule in courts proceeding according to the course of the common law, I am satisfied that in a court of admiralty, where justice is administered upon the broadest principles, and where equitable as well as legal rights, incidentally arising, are maintained, it is unnecessary to turn the parties around to seek redress in a court of chancery. There is no good reason why their rights should not be ascertained and enforced by the court of admiralty itself. The rule adopted by the king's bench, besides being rejected by respectable courts in this country, as already shown, is even questioned by able writers who admit it to be the law. See 1 Lindl. Partn. 168–171, cited in note to Colly. Partn. § 643.

Now, in the present case, the respondent has no release, or discharge of his indebtedness for freight, even from Oliver Canton, or Jane Canton. He shows, at most, a settlement and a receipt from Oliver Canton, as master. The real basis of his defense is the agreement made by Jane Canton and Oliver Canton, that his freight should be paid by

the application thereto of the indebtedness of Jane Canton to him. That agreement surely is not binding on Muller, any more than a promissory note given by Jane Canton in the name of the partnership would have been. I am, therefore, of the opinion that the libelant is entitled to recover the amount of freight justly due in this case. I think, however, that the respondent is entitled to pay at the tariff rates agreed upon beween him and Oliver Canton. The latter, as master of the vessel, had plenary authority to make contracts of affreightment for the vessel. A decree will be made accordingly.