WRIGHT and others *against* POST.

*October* 16.

Twenty persons, feeling interested to support a public right of fishery, enter-
ed into an agreement to defend such right through a trial at law, each
promising to pay to such of them as should be sued for occupying the fish-
ery, his proportion of the expense; three of them were sued, and, after an
unsuccessful defence, each paid from his private funds one third part of the
expense. Held, that these three persons might bring a *joint* action against
a fourth, to recover his proportion of such expense; the joint liability of the
plaintiffs, coupled with the defendant's promise, and not the payment of the
money, being the cause of action.

Several persons having a *joint interest* in the subject of the suit, may and
ought to join.

THIS was an action of *assumpsit*, brought by *J. Wright, J.
Kelsey*, and *A. Kelsey*, to recover of the defendant his propor-
tion of certain sums of money disbursed by them. The de-
claration stated, That at a place called *Menunketesuck* beach
in *Saybrook*, the inhabitants of that town, as well as of
several other towns in the state, have until two years past,
immemorially used and occupied the fishery there as a com-
mon or free fishery; that in the year 1813, *Job Wright* and
*Benjamin Wright*, claiming an exclusive right of fishery there,
threatened to bring suits at law against those, who had occu-
pied, or should occupy said beach, and the privileges belong-
ing thereto; that the plaintiffs and the defendant, together
with sixteen other persons, who felt interested in supporting
the rights of the public, afterwards, in the same year, made
and executed an agreement in writing, to defend said fishery
against any attack that should be made, by any suit at law,
either against the whole, or any number of the signers of such
agreement, and in consideration that such of them as should be
sued by *Job Wright* and others, for using said fishery, would
defend the same through a trial at law, so as to have it legal-
ly adjudicated, whether the right was in the public; the de-
fendant, by the same writing, promised to pay to any and all
of the subscribers, who should be so sued, his reasonable pro-
portion, according to the number of the subscribers, *viz.* one
twentieth part of all the expense arising in defending against,
or in consequence of, any such suit; that in faith of this agree-
ment, the plaintiffs and others continued to occupy said fishery
until the year 1815, when said *Job Wright* and *Benjamin
Wright* brought an action of trespass against the plaintiffs for

occupying said fishery, which came to trial before the superior court, in *December*, 1816, on the plea of *not guilty*, on which trial, the plaintiffs (defendants in that action) employed counsel, and summoned witnesses, and took all lawful and proper means to prove said fishery to be a public privilege, that being the only material question tried ; that the plaintiffs in that action recovered judgment against the present plaintiffs, for damages and costs, the sole ground of such recovery being the taking of fish on said beach, and the use and occupation of said fishery ; that the question decided in such action was no other than that which was contemplated by the subscribers to said agreement, and the damages given were for no other acts than such as were embraced therein, and intended thereby ; and that in the just and lawful defence of said action, the plaintiffs laid out and expended the sum of 2000 dollars, of which the one twentieth part, *viz.* 100 dollars, was the defendant's proportion to pay.

The defendant pleaded *non assumpsit*; and on this issue the cause was tried at *Haddam*, *July* term, 1819, before *Peters*, J.

To prove the expenses and damages claimed in the declaration, the plaintiffs, after having proved the contract alleged, offered in evidence the execution issued on the judgment recovered against them, by *Job Wright* and *Benjamin Wright*, and offered *Heman Starkey*, the officer who collected that execution, to testify, that *J. Wright*, one of the plaintiffs, asked *Starkey* how much one third of the execution, which he, *Wright*, said, was his part to pay, was ? That *Starkey* told him how much it was ; and that he paid it accordingly : That after this, *Starkey* levied the execution on the property of *J. Kelsey* and *A. Kelsey*, the two other defendants, which was posted for sale, and before the day of sale, they paid the balance remaining due on the execution.   To the admission of the testimony thus offered, the defendant objected, because the claim of the plaintiffs in this action for the expenses and damages paid by them, was a joint one ; and the testimony went to prove, that one of the plaintiffs paid one third part of the execution out of his separate property, and not out of any joint fund, and that the two others paid the remainder out of their separate property.   The judge rejected the testimony.

The plaintiffs then produced a bill of one *Boardman* for tavern expenses, paid for witnesses in said former action, and offe-

*Middletown,*
*October,*
*1819.*

Wright
*v.*
Post.

red a witness to testify, that he was at *Boardman's* when the bill was paid; that he saw all the plaintiffs present, handling money; and that one of them paid the bill, but he could not say which of them it was. To the admission of this testimony the defendant also objected, because it did not appear, that the bill was paid out of a joint fund, but by one of the plaintiffs separately. The judge rejected the testimony.

The jury gave a verdict for the defendant; and the plaintiffs moved for a new trial, on the ground that the testimony offered by them was improperly rejected. This motion was reserved.

*Sherman* and *Loomis,* in support of the motion, contended, That the promise being an *express* one, and being made to all the plaintiffs *jointly,* on a *consideration* moving from them *jointly,* the action was well brought *jointly.* The plaintiffs had a *joint interest* in the defendant's undertaking, by whom, or in what manner soever, the expenses were actually paid. It is sufficient that the plaintiffs were jointly liable to pay those expenses; and that the defendant had promised them jointly, to pay to them his proportion. The payment of the money was material only as the measure of damages. For this purpose, it obviously made no difference, whether the money was paid from a joint fund, or from the private pockets of the plaintiffs. 1 *Chitt. Plead.* 59. 2 *Wms. Saund.* 116. *b.*

*Staples* and *Platts,* contra, insisted, That the foundation of the action was the payment of the money; and that being made by three persons separately, they could not sue jointly. The evidence did not support the declaration; and was, therefore, properly rejected. *Brand* & al. v. *Boulcott,* 3 *Bos. & Pull.* 235. *Osborne* & al. v. *Harper,* 5 *East* 225. *Graham* & al. v. *Robertson,* 2 *Term Rep.* 282. 1 *Chitt. Plead.* 8.

HOSMER, Ch. J. In this case, after the plaintiffs had proved the contract, as alleged in the declaration, *Starkey,* the officer, who had the execution issued on the judgment obtained by *Job* and *Benjamin Wright* against them, was offered to testify, that one of the plaintiffs paid a third of it, and the other two the residue. The defendant objected to the admission of the testimony, that the claim of the plaintiffs, in their action for expenses and damages was *joint,* but that the evidence

offered proved the expenditures to be *several*. It was adjudg-
ed to be inadmissible, and was rejected. This raises the
question, whether the evidence offered proved the plaintiffs'
allegation.

If the *legal interest* of the plaintiffs in the sums paid on the
execution was *joint*, the testimony should have been received;
but if *several*, it was rightly rejected. 1 *Chitt. Plead.* 5. For,
when the *legal interest* of the promisees is *several*, they must
sue *severally*. 1 *Chitt. Plead.* 6. A different doctrine would
be unreasonable even to absurdity.

The declaration, undoubtedly, states a *joint* contract; and
the motion admits it to have been proved before the rejected
testimony was offered. It avers, likewise, a *joint defence* and
*expenditure*. Now, it is admitted, that the defendant promis-
ed the plaintiffs, if they would defend the suit, which *Job* and
*Benjamin Wright* might bring against them, he would pay his
proportionable share of the expence attending the defence.
It also appears, that an action was brought against the plain-
tiffs; that they made a joint defence; and that judgment was
rendered against them. Although I have fluctuated on this
point, I am now satisfied, that the joint defence made, when
coupled with the defendant's promise, constitutes *a joint cause
of action*. In this view of the subject, it makes no difference
to the defendant, whether the money was ever paid by the
plaintiffs, if the liability to pay existed; and the testimony
offered was necessary only to ascertain the damages. To
this end it should have been admitted. I proceed on the
ground, that the plaintiffs, founding themselves on a simple
contract, are bound to prove, not only a *joint promise*, but a
*joint consideration*. This, I think, they did, independently of
the testimony offered; and if the extent of the liability were
ascertained, I do not see any necessity for the evidence which
was rejected. But, as the judge proceeded on the ground that
it was requisite to sustain the action, (having repelled it as
being irrelevant,) I am of opinion, this erroneous decision
renders it just, that there should be a new trial.

As to the testimony relative to the expences, incurred for
the support of witnesses, by the plaintiffs *jointly* summoned,
for their *joint benefit*, it undoubtedly should have been receiv-
ed. Whoever paid the money, it was paid to satisfy a *joint
duty;* and the others were bound to contribute. Besides,
there was testimony sufficient to to have been left to the

19

*Middletown,*
October,
1819.

Wright
*v.*
Post.

consideration of the jury, in addition to the combined benefit received, whether the advancement was not *on joint agreement and request.*

I am of opinion that a new trial ought to be granted.

The other Judges were of the same opinion.

New trial to be granted.