Gould
v.
Gould.

### STEPHEN GOULD *vs.* WILLIAM GOULD.

Where two persons, partners in business, were subjected to the payment of a debt of a third person, the one as *surety,* and the other as *the heir* of a co-surety, which debt was paid from the *partnership funds,* IT WAS HELD that a separate action might be maintained by each against the principal for a moiety of the money paid.

In the absence of all proof to the contrary, partners will be presumed to be equally interested in the partnership funds.

IN error from the supreme court. William Gould sued Stephen Gould in the supreme court in an action of *assumpsit* for money paid. The plaintiff, David Banks, and two other persons were the sureties of Stephen Gould, in two bonds for the payment of $2250, of which sum, $2000 were secured by two separate mortgages of real estate, one executed by William Gould, and the other by David Banks; the latter died, and his son David Banks, jun. succeeded to his estate. After the death of David Banks, his son David Banks, jun. and William Gould, being at the time partners in business as booksellers, paid out of their partnership funds and took up the bonds and mortgages amounting to the sum of $2891,88. The *moiety* of this sum the plaintiff claimed to recover. It was objected that he could not maintain a *separate* action for the moiety of the monies paid, and that Banks ought to have been joined with him in the action. The objection was overruled; the defendant excepted, and applied to the supreme court for a new trial, which was refused and judgment rendered for the plaintiff. See 8 *Cowen,* 168. The defendant sued out his writ of error.

The cause here was argued by

*H. W. Warner,* for plaintiff in error.

*C. Baldwin,* for defendant in error.

The following opinion was delivered:

By the CHANCELLOR. William Gould was holden for Stephen Gould as his surety in two several bonds; and for the payment of the same debts the ancestor of D. Banks, jun.

was also security, and the property descended to him was therefore holden. W. Gould and D. Banks, jun. were therefore, as between themselves, equitably bound to contribute equally towards the payment ; and being in partnership, they paid the amount out of their partnership funds. They brought a joint action for the money paid, and on the trial, were nonsuited on the ground that they could not maintain a *joint action*, the original responsibility of the bail being several. Separate actions were then brought, and on the trial of this cause before me, the objection was made that the suits should not have been separate but joint. I came to the conclusion that the judge who tried the first cause was right, and that a joint suit could not be maintained on the implied promise arising out of the original transaction and the subsequent payment ; but that each was entitled to recover in proportion to his interest in the joint fund which had been applied for that purpose ; and I also came to the conclusion that, in the absence of all proof to the contrary, it must be presumed the partners were equally interested in the partnership fund ; and that each of course had paid one half of the debt for the benefit of S. Gould. On a bill of exceptions the supreme court supported the decision at the circuit, and gave judgment for the plaintiff. The determination of this suit must depend upon the correctness of the decision in the present action, without reference to the prior decision in the joint suit ; for if the plaintiffs were improperly nonsuited in that action, they should have excepted to the decision, and had the same corrected by a higher tribunal. The fact of such decision having been made, is mentioned only for the purpose of shewing that there could have been no intention on the part of the plaintiffs to harass the defendant with two suits, when one only was necessary for the attainment of justice.

If the promise on which a suit is brought is made jointly to two or more persons, they must all, if living, join in the action, or they will be nonsuited on the trial. Thus in *Wright and others* v. *Post*, 3 *Conn. Rep.* 142, where twenty persons, feeling interested in a public right of fishery, entered into an agreement with each other that if any of them were sued for

exercise the right, each of the others would pay to those who were sued their proportion of what might be recovered against them ; and three of them were sued jointly, and after a joint recovery, each of those defendants paid his share of the judgment; in a suit brought against one of the associates to recover the amount he had agreed to contribute, it was held that the promise to indemnify was a *joint promise to the three* who were sued jointly for exercising the right, and that they must therefore bring a joint suit for the indemnity, although they paid the judgment in several proportions, and out of their separate property. But if the promises are *several*, each must sue on the promise made to himself, for the damage which he has individually sustained ; and no act of the persons to whom several promises are made can enable them to maintain a joint suit at law against the promissor, without his consent, in relation to matters in which they had no joint interest at the time those promises were made. Where there is an *express* promise, there can seldom be any difficulty in determining whether it is joint or several ; but where it is *implied*, it frequently becomes difficult to determine whether one action should be brought in the names of all the parties having a common interest, or several actions in the names of each, to the extent of his individual interest or injury. In the case of *Osborne and Amphlett* v. *Harper*, 5 *East's Rep.* 225, the parties had been in partnership, and after the dissolution thereof, the defendant contracted a debt in the name of the firm with another person who had no notice of the dissolution. The plaintiffs having been compelled to pay the amount in a joint action against the three, brought a suit against the defendant to recover back the amount they had been obliged to pay by his wrongful act; and the court, after much hesitation, and upon proof that the money which had been paid was raised on their joint credit, sustained a joint suit. From the report of this case, it is evident the court of king's bench considered it as one of great doubt, even on the special circumstances disclosed. It ought not therefore to be deemed a precedent for a decision on a different state of facts. That case was properly decided, as the payment was actually made out of the joint funds of the

plaintiffs. They had been made liable as partners to the third person, by the fraudulent conduct of the defendant, and without their consent. Each had therefore an unquestionable right to pay the whole or any part of the demand, and then to bring a separate suit for the amount so paid, or they might pay it out of their joint funds, and bring a joint action for so much money paid to his use. Having committed a fraud upon them jointly as well as individually, the promise to refund must necessarily correspond with the actual payment of the money ; and if they elected to pay it jointly, it did not lie in his mouth to object that it had been paid, in consequence of a several request, to each. But an implied contract between a principal and his sureties, unless such sureties are partners and become answerable for him in that character, is a separate and undivided promise to each to indemnify him against any loss he may individually sustain in consequence of becoming such surety, and that if he is obliged to pay any money on that account, he will refund it on request. The law in such case will imply a promise corresponding with the original agreement and request, whether such surety pays the amount out of his own private funds, or out of partnership funds for which he may be compelled to account to his co-partners. In *Graham* v. *Green*, 4 *Hayw. Rep.* 188, the supreme court of appeals in Tennessee say : " It is certain that by the rules of the common law two sureties cannot join in an action to recover the money which they have been compelled to pay for the principal." *Williams* v. *Alley*, *Cooke's Rep.* 257, *Brand* v. *Boulcott*, 3 *Bos. & Pul.* 235, and *Kilby* v. *Steel*, 5 *Esp. Rep.* 194, were decided on the same principle.

In this case Banks and Gould were not even joint sureties. W. Gould was one of the sureties, and liable for the payment of the debt, and Banks was equitably bound to contribute on account of the land which descended to him from his father, the co-surety. Under these circumstances, although they happened to be partners at the time of payment, they could not, without some agreement or request from S. Gould, so shape their payment as to raise a joint promise by implication to both. If each had been liable as a surety on a distinct demand against the defendant, although the amounts

ALBANY,
Dec. 1830.

Gould
v.
Gould.

were the same, they surely could not have raised a joint promise as against him by any arrangement between themselves as to the manner of discharging their respective liabilities. If they had paid both debts out of their partnership funds, in such a case, it is impossible that the law should raise an implied promise to pay the amount of the two separate debts to the partners jointly ; but in that case each must recover the amount for which he was individually liable as surety, by a suit in his own name. In the case under consideration, each was liable separately for the payment of the whole amount ; the one at law on the original bond, and the other in equity, as the heir at law of the co-surety ; and as between themselves, each was equitably bound to contribute one half. Under those circumstances, if the payment was made out of a fund in which they were equally interested, then each did in fact pay one half, and the law raised a corresponding promise from the defendant to each, for so much money paid for him and at his request ; which request was the original agreement to indemnify each of his sureties.

The amount which the plaintiff was entitled to recover, must depend upon the question whether, in the absence of all proof to the contrary, partners are presumed to be equally interested in the partnership funds. This was unquestionably the rule of the civil law. In *Peacock* v. *Peacock*, 16 *Ves.* 56, Lord Eldon says : " As no distinct share in the partnership property was ascertained by force of any express contract between them, they must of necessity be equal partners, if partners in any thing." And the learned commentator on American law has adopted this as the general conclusion of law, where there is no evidence of any agreement to the contrary. 3 *Kent's Com.* 6. It is certainly the natural conclusion, in the absence of any proof from which a contrary inference can be drawn, and in most cases it is a conclusion which will correspond with the fact. If these partners were interested in the joint funds in unequal proportions, the defendant would have found no difficulty in establishing that fact by calling Banks, the co-partner, who was a competent witness, and who had no interest whatever in the event of this suit.

On the whole case, therefore, my opinion is that the decision of the supreme court was correct as to both these questions, and that their judgment should be affirmed.

It being the unanimous opinion of the court that the judgment of the supreme court ought to be affirmed, it was accordingly *affirmed*.