Hoffman, J.
— I concur in the result to which the Court has arrived. There are some other views which I have taken of the case, and proceed to state. T do not find in the articles of partnership any satisfactory evidence of an intention in fact, to pay Hasbrouck the extra fifty per cent of profits as a compensation for Ms services. That conclusion makes him a clerk, with a salary rated upon profits in one point of view, and a partner in another. (Burckle v. Eckart, 1 Denio, 337; St. Victor v. Daubret, 9 Louis, R., 314.) I regard the articles as not supplying any plain *113 indication of the intent or meaning of the parties upon the subject. The question in my mind is, what rule has the law given for interpreting the provisions, and apportioning the sum remaining ?
I understand the case to be, that the debts are paid, the assets collected, and of the money capital contributed there remains the sum of $879.80; that the residue has been lost in the operations of the concern. All that has been received from the business has been used in discharge of the expenses or liabilities. These have exhausted $3,120.20 out of the $4,000, contributed in equal portions. How is the residue to be divided between the partners ?
There are some general propositions bearing upon this question to which I shall first advert.
A partnership may be formed, not only as to strangers but between the parties, in which one contributes all the money capital, and another his skill and industry alone; and such a partnership may involve the entire community of the labor and skill with the money, upon the footing, not only of an equal, but of a higher estimate and value placed upon the former than upon the latter. (Peacock v. Peacock, 16 Vesey, 49; Dob v. Halsey, 16 John. Rep., 34; Chase v. Barrett, 4 Paige, 158; Kent’s Com., vol. 3, p. 28; Collyer on Part., §§ 16, 17; Bell’s Com., 2, p. 614, and the foreign authorities hereafter cited.) “ Partnerships may and do exist, in which all the capital is contributed by one, and nothing but his labor by the other, who notwithstanding, is entitled to consider the capital as joint stock, and claim an equal share of it, or of its produce. The law in all these cases moulds itself to the intention of the parties, when that can be ascertained, and is conformable in this respect to the docrine of continental jurists.” (Smith’s Mercantile Law, p. 12.)
Again, it is a settled rule that a liability for losses follows a right to profits, and ordinarily, in the same proportions. (Ch. J. De Grey in Grace v. Smith, 2 Wm. Bl., 999 ; Dob v. Halsey, 16 John. Rep., 40; Catskill Bank v. Gray, 14 Barb. Rep., 471; Burckle v. Eckart, 1 Denio, 337; Bowman v. Bailey, 16 Vermont Rep., 170.) Generally speaking, the cases are those in which the question arose as to a responsibility to creditors.- This was the case also in Perry v. Bull (14 Georg. Rep., 699), in which the point is fully examined.
*114 I apprehend also, that where there is no express provision, profits are to be taken, and losses are to be borne, in proportion to the contribution of the associates to the common fund. This is the doctrine of the great majority of the writers of the civil law. (Troplong clu Contrat de Societé, tome 2, p. 84.) He shows that the text of Ulpian is really not contradictory. Pothier approves of it, with a modification not important to be noticed (Ibid); and Pardessus adopts the proposition of Pothier, Code Comm., N., 985, tome 4, p. 36; Domat, vol. 1, p. 149. Article 1853, Code of France; Pirtle v. Penn, 3 Dana’s K’y Rep. See also the full and able comment of Yinnius, who examines and criticises the opposite doctrine with care. Inst., Ed. 1726, De Societate, Lib. iii, tit. 251.
The passage in Bell’s Commentaries (vol. 2, p. 614) intimating a different rule, cannot be regarded as of force in opposition to such strength of authority as I have adduced to support this doctrine.
The different rule apparently stated by the text writers, with the authorities relied upon, when fully examined, do not conflict with the civil law. (See Collyeron Partnership, p. 161, § 167, Perkins’ Edition.)
After a careful examination of the English authorities, I am satisfied that we are at liberty to adopt any just principle for the valuation of labor contributed to the partnership funds, which the agreement of the parties does not preclude, and equity may dictate. It is manifest that if the law permits us to do this in the simple case of labor given by one, and money by another, it will sanction it in all the combinations into which they may be brought.
The case of Peacock v. Peacock is generally cited as settling an arbitrary rule for the appreciation of labor, upon the question of . profits and losses, where the parties have not expressly regulated it, and settled it upon the footing of equality. The case is reported in 16 Yesey, 51, and (upon the trial of the issue before Lord Ellenborough), in 2 Campbell, 45. The latter treated it as a question for a jury on evidence.
The subject received a full discussion and determination in the case of Thompson v. Campbell (5 Wilson & Shaw, 16; Ibid, 7th Bligh, 432), in the House of Lords. Campbell had been a *115 clerk, and was taken into partnership without contributing capital, and no share of profits fixed. The Lord Ordinary sent the case to a jury court to determine whether there was a partnership, and if so, the proportions of the parties. On a reclaimer, the Court above found that there was a partnership from a certain day; and that the presumption of law was, that there was to be an equal participation of profits.
On appeal to the House of Lords, the judgment was reversed, and the Lords of Session were directed to frame issues to try the whole of the matters in dispute. It was held that there was no such presumption of law as was insisted upon; that it was a presumption of fact which a jury might act upon in the absence of everything tending to control it; but that such evidence should not only not be shut out, or discountenanced, but should be even courted to show what would be a just proportion.
It was decided that the rule stated by Lord Ellenborough, and acted upon by the jury, was not shaken by anything which fell from Lord Eldon, in Peacock v. Peacock. The jury of merchants was the best tribunal in the land to settle such a question; and the Scottish law was not, that equality of division was a settled rule.
Justice Story is dissatisfied with the reasoning of the great judges in this case, and doubts the decision. He cites Chancellor Kent as opposed, and also some later English authorities. (Kent’s Com., vol. 3, p. 28; Gould v. Gould, 6 Wend., 263; Webster v. Bray, 7 Hare, 177; Fanar v. Beswick, 1st Moody & Rob., 527.) Chancellor Kent cites Peacock v. Peacock, and Gould v. Gould.
In Gould v. Gould Chanceller Walworth adverts to Peacock v. Peacock, and observes “ that in the absence of all proof to the contrary, partners are presumed to be equally interested. It was after a trial had been had, and inequality, if any, could have been proven by Bradley, a competent witness.”
I have examined with care the other cases cited, and presume to say that there is nothing in them inconsistent with Thompson v. Campbell. If there was they would be contrary to the law of England, as finally settled in the House of Lords.
I take it then to be the law of England, that in the case of a partnership constituted by the contribution of the labor or skill *116 of one, and the capital of another, there is no presumption of law, of equality of participation. A court or jury is at liberty to value the former upon all the facts of the particular case. They may consider youth, eminence or inferiority of skill, physical vigor, and experience; in short, all that can influence an estimation ex eqiio et bono. The law is not, that a legal presumption must be overcome by demonstrative evidence of a different contract; but it is, that equality is merely a presumption of fact, as a piece of evidence to be weighed by a jury or judge with all the other facts, to lead to a right decision and estimate.
This is in truth the recognition of a great doctrine of the civil law, traceable through all its ages, and which the Code of France has attempted to render precise, the doctrine, viz.: of the appreciation of labor in contrast with capital. There was on the one side, what may be termed the imaginative theory carried to excess, which lifted industry and skill far above money ; and there was on the other side, the material theory, which made money preeminent, and labor insignificant. The wisdom and the learning of a succession of able commentators have been employed to adjust, by the laws of truth and reason, these rival pretensions.
In a case then of labor furnished by one, with or without a contribution of money, and money alone supplied by another, what rules of law govern the relations between the parties ? I am satisfied that the various questions which arise in such cases, and several of which arise here, cannot be well answered without recourse to the foreign law.
There is, perhaps, no passage in which the outline of the general principles upon this subject, is more fully or precisely stated, than the following from Vinnius: “ This contribution of work is not made in one mode only, for either the work is contributed with the use of money only, in which case the capital perishes to its owner, or the work is contributed with the very proprietorship of the money, in which case he who supplies the work is a sharer of the capital. In the first case, it is not the capital which is compared with the labor, but the risk of losing that capital and losing the gain which may probably be expected from it. In the other case, the value of the work is, as it were, added to the capital, and he who furnishes the work has a share for its amount, in the capital itself.” (Inst., p. 697, Ed. 1726).
*117 See also Eutherforth’s Institutes (b. 1, cap. 13, §§ 32, 36,) for a valuable statement of the rule. It is quoted by Justice Story (On Partnerships, p. 38, note).
The equalization of labor with capital was a favorite dogma of many writers. The authors of what is termed the School of the Theologians particularly supported it.
When industry and capital form thus a common fund on a footing of parity, the result is, that as to profits, every portion of the money which has contributed to produce them is compensated by an equal value in the labor supplied. Each portion of money lost is met by its equivalent value in so much labor spent; and what may remain of money is a fund owned jointly and so divisible.
This principle and its operation is admirably stated by Duranton. (Droit Francaise, tome 17, p. 487, n. 452.)
But the case is very different when labor is fiirnished as an equivalent for the use of money only, and not as of equal value with the money itself. The contributor of capital has then a right to reclaim the amount from the fund. The associate of labor is not liable for any part of a loss of such money. Res peril domino is the maxim strictly applicable; and if any portion of the money is unexhausted, the party who advanced it receives it back.
This rule is supported by a multitude of the ablest commentators of the civil law. From the list of them to be found in Troplong (tome 13, p. 62, el seq), I should judge it to be almost universally received.
The testimony of Puffendorf in its favor may be usefully stated at length.
“ Upon the termination of a partnership, if each party contributed only money, it is plain that upon a division, each must receive according to his contribution. But if both money and labor were contributed, it must be considered, after what manner the collation was made; for when labor is contributed on the one side, and only the use of money on the other, he who contributed the money does not admit the other to a share in the principal, but only to his proportion of the gain that might be made of the money and labor joined together; and in this case, as he who contributed only labor has no title to any part of the money, *118 so the other alone as owner is concerned in the risk that the money is exposed to. The risk that the money runs, and the gain that may be expected from it, is compared with the labor.”
“ The best way in this case is, to rate the risk of the principal and the hope of the gain according to the interest generally given for money. Supposing then this interest is to be £6 per cent, if one party contributes labor worth £60, and the other £1,000 in money, they shall share equally of the gain.” (Law Hat. and Hature, book v, c. 8, § 2.)
I may add that if the capital is £1,000, the value of the labor when not defined, is fixed at $60 per annum as an equivalent for the risk of the contributor of money losing £60, the interest receivable, had the amount been invested at the legal rate.
Yet some writers contested this view, and chiefly the distinguished Pothier, who introduced a different regulation into the Code of France. The 1851st article provides, “that all subjects of contribution which are not fixed, but consume in the usage, are at the risk of the association.” Money is treated as of this class. The case is put of a contribution of the use of 20,000 francs by one, and of labor only by the other, and of the loss of 10,000 francs. Is the associate of labor to bear 5,000 francs of this loss? The answer of the civil law, by its great mass of eminent writers, is Ho! The answer of Pothier, and of the Code of France, is Yes! (Troplong, ut supra, also p. 187, n. 660)
Another important point was much contested. In the absence of express provisions, what shall be the presumption of the law? Is it that the body of the money capital is brought into the common stock (communicata), or only the use of it? This is a question which has long agitated the interpreters of the Roman law.
I quote the opinion of Pardessus in his own language. In the absence of precise stipulations, or controlling circumstances, where an associate brings, in industry alone, the other who has contributed property shall be treated as giving only the use of the thing; for that use is an equivalent more exact for the industry; than the proprietorship. (Droit Com., tome 4, 51.)
He is supported by Duranton, who cites a number of authors to the same effect. (Tome 17, p. 490, &c.)
Yet the prevalence of the attractive idea of the exaltation of *119 labor and skill to an equality with money, has led several writers to combat this conclusion, and Grotius decides; that we cannot erect into a maxim the equality of labor with the interest of money only; but the circumstances of each case must be consulted to determine the intention of the parties; whether the labor was to be balanced with the money, or only with the use of the money. (De Jure Pacis et Belli, 2, 12, 24.)
Carrying out this leading idea of the value of labor, the Code of France has sought to establish a fixed rule in place of the speculations of the learned; and it has declared in the 1853d article, that when one brings in only his industry, his share in the benefits and losses is regulated, as if his contribution had been equal to that of the associate, who has brought in the smallest amount.
M. Duranton’s comments upon this article, appear to me to be clear and satisfactory. “If there are two parties, the labor of the one who contributes it, is estimated as of equal value with the money contribution of the other. If there are several partners, it is estimated as equal to the contribution of the one who has brought in the least amount.
“But if the service and the money are not confounded as to ownership, in other words, not combined in a common stock, but only the use of the money is compared with the industry, then the money is reclaimed befor a division. But when the contribution of one is confounded as to the ownership itself, with the industry of the other, as the amount cannot be reclaimed, the portion of the one who famishes industry, is not only in the profits and losses, but in the fund itself.”
It is sufficiently obvious, that the 1853d article of the Code before noticed, provides for a case in which the labor is plainly not brought in comparison with the use of the money merely. When that point is indeterminate, the Code settles it. When the money is at the risk of the association, it becomes the property of the association. The labor is made equal to the money of one, or to that of the lowest contributor, if more than one.
But the Code has not provided for the case of a contribution by one of industry, together with a certain amount of capital, and by another of capital only. The authors of the Journále de Palais consider that this question should be left to the decision *120 of the judges upon the circumstances of the case. (Repertoire Generate, vol. 11, p. 838, n. 382, Astor Library.) They put this case—a contribution of 50,000 francs by one, and of 25,000 francs and industry by another. They insist that the contribution of the latter is to be estimated at 50,000 francs only, not at 75,000. They cite Duvergier to the same point.
On the other side, the principle of Troplong would estimate it at 75,000 francs. He gives an example of one party putting in 20,000 francs, and another 10,000 and his industry. He deems the contribution of the latter to be 30,000 francs. (Tome 13, p. 88, n. 619).
Duranton fully discusses this subject, especially as connected with the case of three associates. He concludes thus: “After all, as the Code has not provided for this case, the Tribunals must decide, upon the circumstances, whether the parties have estimated the industry of one simply by the value of the money he himself put in, or according to the difference between his contribution and that of his associate who has contributed the least; or, lastly, upon the footing of the actual amount of the money contribution of the associate who puts in the least. (Tome 17, p. 495.)
In the Treatise of Scheiduuin, edited by Weisenbach, the rule is stated, with decision, that where one contributes money, and the other labor, the latter, upon the termination of the partnership, neither shares in the money nor bears any portion of what is lost. He loses his labor, and the other his money. (Comm, on the Institutes, p. 459.)
I understand that no writer upon the civil law of modern days is of higher authority than Str'ykius. In his chapter De Societate (Supplement, vol. 13, p. 118, § 6), he says: “Care must also be taken” (he is speaking of an act for forming a partnership) “if one brings in only labor, and another capital, as to what shall be the rule, when, upon the dissolution, nothing but the capital remains; because, of strict right, he who has contributed the work, receives nothing of the capital, but the whole returns to him who furnished it.” He then adverts to the exception advocated by Molina and others; when the work is so important as to be an equivalent for the capital itself. He condemns the exception, and concludes that to entitle the partner *121 of labor to share in the capital, there must be a provision in the articles to that effect.
See also a passage from Ansaldus, quoted by Mr. Loubat in his work on Limited Partnerships, p. 305.
But as the Code has not fixed any rule for the estimate of labor, when one party contributes it in conjunction with money, neither has it prescribed that in such case, the money is to be at the risk of the association; in other words, to be compared with capital itself. Especially, it has not provided for this case, when, as in the present instance, the rate of profits is fixed and unequal.
But M. .Duranton meets this case. “Suppose that Paul and Peter have contracted a partnership for five years. Paul has put in 30,000 francs, and Peter 10,000 francs with his industry, or his industry merely; if it is provided in the contract that each of the parties shall have a certain portion of the profits or in the losses (and it is unimportant whether this is equal or ■ unequal) there is no difficulty in the case; for it is evident that the parties meant that the use or enjoyment only of the capital should be in common, as it is in the profits or in the losses; that they have regulated, the shares, and the body of the contribution is not profit. Each one, therefore, is to take back the sum contributed respectively, or by one of them solely, and the fruits are divided according to the proportions fixed. (Tome 17, p. 439.)
“ Even when the contract is silent as to the shares, it is more reasonable to suppose that the industry has Deen compared with the interest of the money put in by one, or with the interest of the excess of that sum over that brought in by the associate who has contributed labor also.” (Ibid.)
The principle of the author seems reasonable and practical. Profits naturally indicate the fruits or accretions of the fund, and are separate from and independent of it, although springing out of it; and, conversely, losses may be regarded as the liabilities to be paid beyond the capital first applied in their discharge. It is in firuits beyond capital that the party is to have his proportion, and losses beyond capital he is to bear in the same ratio.
I may add that this view receives some support from the *122 general doctrine of the law; that upon the final adjustment of accounts, after debts are paid, the capital of each is to be restored before profits are ascertained and divided. (Collyer, § 318; Cary on Partnership, 89; Bell’s Com., vol. 2, p. 616 ; 2d Yesey, Sen., 242; Levy on Mercantile Accounts, § 200.)
The application of the rules of the civil law thus stated to the present case seems to be both clear and just. We are to appreciate the value of Hasbrouck’s extra labor by comparing it with the interest of some given amount of contribution or capital found in the case. We have the capital of $4,000 contributed equally. We have an extra half of profits given to him, and withdrawn from Childs. Assuming the capital to yield, with the application of labor, legal interest, we have $280 as the annual profit. Childs takes of this one-fourth or $70 on his capital of $2,000; Hasbrouck an equal amount on his same capital. Hence the appreciation of his extra labor is the interest on one-half of the capital, or the profit of the same, whether beyond or below legal interest. Lr case nothing is earned, Hasbrouclc’s labor thus valued, and the interest on his capital is lost. Childs’ interest on his capital has been also lost. The loss is thus proportionate to the profits, had any been earned. Then the payment of capital towards a further loss begins on a footing of equality and if anything remains, it is equally divisible.
The theory of Childs’ counsel is, that three-fourths of all the losses (or three-fourths of $3,120.20), is to be borne by Hasbrouck. This would be $2,340.15, and leave him chargeable with $340.15, his contribution being $2,000. That Childs is to bear one-fourth, $780.05, which leaves him entitled to $1,219.95. The whole of the residue must, therefore, be paid to him, $879.80, and he would be entitled to $340.15, which Hasbrouck owes.
It is obvious that had the losses exhausted the whole capital, Hasbrouck would thus have been bound to pay Childs $1,000, upon this theory. Thus, in effect, Hasbrouck would be made the guarantor of $1,000 of Childs’ capital, because in remuneration of his extra labor and capacity, three-fourths of profits are reserved to' him, instead of one-half. I apprehend that the agreement does not imply this; that the law does not warrant it; and- Certainly justice disclaims it.
*123 My conclusion is, that the remaining fund is to be equally divided between the parties.
Judgment was ordered accordingly.*

 This case was submittedin December, 1857, at a General Term, held before Bosworth, Hoffman, Slosson and Woodruff, J. J.; the Judges were unable to agree upon the proper judgment to be entered; Bosworth and Woodruff, J. J., were of the opinion that the losses should be borne by the partners in the same proportions that they had agreed that they should share in the profits.
They deemed the general rule, that when articles of copartnership declare the proportion in which the profits are to be shared, but are silent on the subject of losses, the partners are bound to contribute in the same proportion to the losses, to be well settled.
That in a case like the present, the Court are not at liberty to indulge in conjecture respecting the motive which induced the parties to make the apportionment of profits to which they agreed.
That the parties to the agreement must be assumed to have known the general rule before stated, and that it is therefore to be assumed as matter of legal construction, that when the parties agreed that Hasbrouck should receive three-fourths of the profits, one of the considerations moving thereto, was his known liability in such case to bear the like proportion of the losses.
That if the Court are to inquire at all into the reasons which induced the assent of the parties to the arrangement, it cannot be said, judicially, that the services which Hasbrouck was to render were worth any particular sum, nor that they were necessarily more useful to the firm than the credit and influence of Childs with such services as he was bound to render, while on the other hand it is reasonable that he who had the chance of the largest profit should in turn take the hazard of the greatest loss.
Nor can the services and talents of Hasbrouck be regarded as equivalent to a contribution of capital, to the amount of the aggregate of money contributed, so as to draw to itself on that ground one-half the profits, for the same reasons last suggested. But if they can be regarded as capital, then they should be set down in stating the accounts as so much money, to wit, §4,000, and as in their nature they cannot be lost (but the temporary use thereof only) they remain to Hasbrouck as part of his distributive share of the surplus assets, and then this reason for allowing him three-quarters of the profits will result in charging him the same proportion of the losses, for plainly, if Hasbrouck had contributed §6,000 and Childs §2,000, and the services being equal, Hasbrouck, by agreement, was to receive three-quarters the profits, he would, so long as any capital remained, bear three-quarters of the loss.
But that the reasonable and obvious explanation of the arrangement made was, that the business was placed more especially under the management of Hasbrouck, and was to be conducted mainly at his risk, as to profit and loss. *124 Having the actual control and the hope of larger gains, losses, from his failure in skill or judgment, or from his unforeseen misadventures, though without any fault, might properly and equitably fall upon him for whose greater benefit the adventure was made.
That no Court could say that Childs had agreed or would have consented that his capital should be employed in the business, under a stipulation that Hasbrouck should enjoy threé.-fourths of the profits, except upon a clear recognition of the principle, that if his own chances of profits were small, his hazard of loss existed only in the like relative degree.
That it is not only in accordance with the general rule above stated, and which, as a general rule, is not denied, but it is safer and best calculated to do justice, to apportion losses according to the chances of profit, than to indulge in speculation and complicate the subject by conjectures respecting the motives of the parties in each particular case, not declared in the instrument, and so to destroy the rule itself, render any general rule impossible, and leave the distribution of surplus assets to the uncertainty which always results from suffering the supposed hardships of the case to affect the decision, or which may be worse, to the peculiar views of the judge who, for the time being, may be charged with such distribution.
That the application of these principles in truth works no hardship. Since in this view it conforms to the true construction of the agreement of the parties. Hasbrouck has had his chances of profits and his full opportunity to make his services and skill avail to produce them, and each should share the loss in the like proportion.
Hoffman and Slosson, J. J., were of the opinion that the losses should be borne by the partners equally.
A reargument was ordered, and was had in April, 1858, before Hoffman Slosson and Piebrepont, J. J., and after such reargument was had, the case was decided as, and for the reasons above stated.