THOMAS GILLERAN, Respondent, *v.* SPRINGFIELD L. I. CEMETERY SOCIETY, Appellant, Impleaded with GEORGE W. CLUNE, as Receiver in Proceedings Supplementary to Execution of the Property of MOSES JAFFE and FRANCIS GILBERT, as Trustee in Bankruptcy of MOSES JAFFE, Defendants.

Second Department, December 15, 1916.

Pleading — complaint — parties — joint or several liability — contract — consideration.

A complaint, which alleges that the plaintiff and one J., at the request and for the benefit of the defendant, a cemetery society, borrowed money from a bank upon their promissory note and pledged for its payment certificates of indebtedness issued by the defendant, one-half of which was owned by the plaintiff and the other half by J.; that the defendant promised to assume and to pay the note so that the plaintiff and J., and each of them, *would not lose their certificates of indebtedness and would receive the return thereof without loss,* and that the collateral securities were subsequently sold and purchased in the interest of the defendant to the damage of the plaintiff, states a several and not a joint liability, and, therefore, J. was improperly joined, and such cause of action being

joined to a second cause of action where J. is a necessary party, demurrers to the first cause of action and to the complaint should be sustained.

Allegations in said complaint, as to the second cause of action, that the defendant, being in doubt whether the plaintiff and J. had correctly advised it respecting its right to use certain land for cemetery purposes, agreed with them that if the question was decided against it, it would take up the note in question and hold the collateral to indemnify it for any sum paid, and also agreed to assume the note, are sufficient.

Consideration for said agreement is found in the qualified stipulation of the plaintiff and J. that their property could be used to pay the debt.

APPEAL by the defendant, Springfield L. I. Cemetery Society, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Queens on the 4th day of October, 1916.

*Daniel Day Walton,* for the appellant.

*Loren E. Harter,* for the respondent.

THOMAS, J.:

The demurrer to the complaint was overruled. The complaint would state two causes of action, but the basis of each is that, in 1909, at defendant cemetery society's request and for its benefit, the plaintiff and Jaffe upon their promissory note borrowed from a bank $25,000, and pledged for its payment $375,000 of certificates of indebtedness issued by the defendant, one-half of which was owned by the plaintiff and the other half by Jaffe. The defendant induced such action by a promise to assume, and to pay, the note and save the makers harmless. The complaint further alleges that the defendant agreed "to hold the plaintiff and the said  *  *  *  Jaffe harmless from any loss by reason of the making of said note or the pledging of said collateral, and assumed and agreed to pay and discharge said note and the interest thereon, to the end that the plaintiff and the said  *  *  *  Jaffe, and each of them, would not lose their said certificates of indebtedness and would receive the return thereof without any loss or damage." The defendant carried the note on its books and paid the interest thereon until 1915, when, on account of non-payment and upon notice, the collateral security was sold and purchased in the interest of defendant. The trustee in bankruptcy of Jaffe refusing to become a plaintiff was made a defendant, but the prayer for

judgment is that the plaintiff be paid only his damages aris-
ing from the sale of the collateral. The second cause of
action, based upon a written agreement made in 1910, is to
recover for the plaintiff's loss on account of the sale of the col-
lateral. The question arose, as is inferable, whether the
society could use its land for cemetery purposes, as Gilleran
and Jaffe, rendering professional services, had advised affirm-
atively; that by the agreement they undertook to assure
the society that such advice was correct; and that, if it
should be adjudicated within a specified time that the
society did not have such right, it could take up the note
and collateral and hold the certificates until the defendant
should be reimbursed. The agreement recites a mutual con-
sideration of one dollar, which is followed by a stipulation
that the parties of the first part represent and warrant that
the society has full power and authority to use the land acquired
for cemetery purposes, whereupon the society assumes the pay-
ment of the note. Then follows a stipulation that, if there
should be a decree denying such right on the part of the
society, it shall take up the note and collateral and hold the
certificates for the purpose stated. The allegations in the
second cause of action further are that the society failed to take
up the note and that the collateral was sold to the plaintiff's
damage, as stated in the first count. The demurrer raises the
question whether there is a misjoinder of a several cause of
action on the part of the plaintiff and Jaffe and a joint cause
of action in favor of both, and whether the facts stated in the
second cause of action are sufficient. Upon an earlier appeal
to this court it was decided by affirming the order below that
the first cause of action was several, but as Jaffe was not
before the court the sufficiency of the second cause of action
was not determined.* The first question is whether the first
cause of action is joint or several. Our late decision is that
it was several. But Jaffe has been made a party. The
complaint has been amended to withdraw allegations of
a joint and several promise to the makers. That does not
change the pleading. The agreement as to the promisees
could not be joint and several. (*Anderson* v. *Martindale*, 1

* See 174 App. Div. 885.— [REP.

East, 497, 498.) Which is it? It will be observed from the complaint that the statement is that the plaintiff and Jaffe, at the request of the society and upon the society's promise and agreement to pay the note, made the same, and that the makers pledged collateral in which each had a several interest of one-half in amount. It must be noticed in this connection that this is not a contract of suretyship. The society was not a party to the note; it had no agreement with the bank. The appellant relies upon *Gould* v. *Gould* (8 Cow. 168; affd., 6 Wend. 263), which deals with the doctrine of suretyship. But that case and *Wright* v. *Post* (3 Conn. 142) and *Marie* v. *Garrison* (83 N. Y. 14) do not in their facts approach those here involved. The present question, examined in *White* v. *Tyndall* (L. R. 13 App. Cas. 263), related to the liability of covenantors, but the discussion by the several judges is useful. Lord HERSCHELL wrote: "Where several persons covenant with another in terms which import without ambiguity a joint and not a several obligation, the covenant must be held to be a joint one. Where the terms are ambiguous and may import either a joint or a several obligation, you may no doubt look at the other parts of the deed, the interests of the covenantors, and indeed any other circumstances appearing on the face of the instrument which will aid in the determination of the intention of the parties." But certain tests have been made to aid interpretation, for instance the several interests of the promisees. As to that it is said in the same opinion: "It has no doubt been held that where the interests of covanantees are several, a covenant which in form is joint may be moulded according to those several interests; but that, I take it, is only in the case where, to use the language of Lord COKE, the covenant is to several for the performance of several duties to each of them. Now, in the first place I would say that I know of no authority for extending such a doctrine to the case of covenantors. It has always, so far as I am aware, been limited to covenantees." Thereupon it is stated that the covenant to pay rent was not for the performance by each of them to pay rent, but "one single rent and not a several rent." The grant was in form joint, but the words "as tenants in common and not as joint tenants" were found in the

tenedum, but were followed "by a reddendum joint in form and creating *prima facie* a joint obligation." The covenant was held to be joint although the covenantors covenanted for themselves, "their executors, administrators and assigns." In *Anderson* v. *Martindale* (*supra*) Lord KENYON said: "Here is a covenant to two to pay an annuity to one of them; shall both bring actions for the same interest where only one duty is to be paid? Which of them ought to recover for the non-performance of the covenant? The defendant is only bound to pay the annuity once. This is different, therefore, from the case put by Lord COKE, where the covenant is to several for the performance of several duties to each; there the covenant shall be moulded according to the several interests of the parties, and each shall only recover for a breach so far as his own interest extends." In *Withers* v. *Bircham* (3 B. & C. 254) C covenanted with A and B and their executors to pay annuities, or either of them, when the grantor thereof should make default. The court said: "That wherever the interest of the covenantees is joint, although the covenant be in terms joint and several, the action follows the nature of the interest, and must be brought in the name of all the covenantees; but where the interest of the covenantees is several they may maintain separate actions, although the language of the covenant be joint." The covenant was considered several, as it was for the payment of two distinct annuities. In *Hatsall* v. *Griffith* (2 Crompt. & M. 679) two owners of a vessel, as the agents for three, employed the defendant to sell it. It was decided that there was a joint employment. In *Servante* v. *James* (10 B. & C. 410) the master of a vessel covenanted with the several part owners and their several and respective executors, administrators and assigns, to pay certain moneys to them, and to their and every of their several and respective executors, etc., at a banker's, and in such parts and proportions as were set against their several and respective names. The covenant was considered several, as it might well be. The reference to "their several and respective executors," etc., influenced the decision, and it was also observed that if the covenant were joint, a release by one would defeat an action by all. Any presentation of the question should include *Capen* v. *Barrows* (1 Gray,

376), where attention was given to legal interests in the covenant. The action involved an indenture of partnership. METCALF, J., stated the three propositions which had been deduced in Broom on Parties (p. 8): " ' 1. Where the covenant is in its terms several, but the interest of the covenantees is joint, they must join in suing upon the covenant; this rule being in accordance with *Slingsby's* case, 5 Co. 18 *b*, and *Anderson* v. *Martindale*, 1 East, 497, both of which cases have been repeatedly recognized as law. 2. Where the covenant is in its terms expressly and positively joint, the covenantees must join in an action upon the covenant, although as between themselves their interest is several. 3. Where the language of the covenant is capable of being so construed, it shall be taken to be joint or several, according to the interest of the covenantees.' " The case was deemed to fall under the third proposition. The present complaint alleges a promise to two persons. That would indicate a joint contract. The agreement required the two men to borrow money. That was a joint act. But they were to borrow and did borrow upon their note, which in usual banking would create a joint and several liability. The agreement required the pledging of a gross amount of collateral, whereof each owned one-half. Necessarily the act of pledging was several. So as against inference from the joint promise to them is the fact that plaintiff and Jaffe each was required to do acts, viz., execute a note probably creating several liability, and pledge property owned in severalty. The defendant agreed to hold plaintiff and Jaffe harmless from loss by reason (1) of making the note; (2) of pledging the collateral "*to the end* that the plaintiff and the said * * * Jaffe, and each of them, would not lose their said certificates of indebtedness and would receive the return thereof without any loss or damage." The object in view was that each man should get back what he had pledged. In the nature of the case plaintiff or Jaffe could not receive what the other pledged. Hence, the property was pledged separately and was returnable separately. Moreover, in usual course each could be sued separately on the note, and his property sold on execution. The parties had no joint property to protect. I do not perceive how any joint benefit would accrue.

The subject-matter of defendant's promise was to protect two men, but each in his own. . Therefore, Jaffe is improperly joined as to the first cause of action and the demurrer to it should be sustained, and such cause of action is also joined to the second cause of action where Jaffe is a necessary party. Hence, the demurrers to the first cause of action and to the complaint should be sustained. I come now to the second cause of action, where the principal question is whether it states a cause of action. The contract is peculiar, but it appears that the plaintiff and Jaffe had borrowed some $25,000 at the society's request and that it had been used for it. This transaction seems to have involved a doubt whether the plaintiff and Jaffe had correctly advised the society respecting its right to use certain land for cemetery purposes. To settle that matter, the immediate borrowers agreed with the society that, if the question was decided against the society, it would take up the debt and hold the collateral to indemnify it for any sum paid. As a part of the contract, the society agreed to assume the note. The defendant asserts that a past consideration will not sustain a promise — a proposition that requires the qualification that the past act was not at the promisor's request, and that the recital of a consideration of one dollar is insufficient, and that the statement in the complaint that the contract was made for a valuable consideration is a legal conclusion. But even if all that be admitted, the contract should be sustained, as consideration is found in the qualified stipulation of plaintiff and Jaffe that their property could be used to pay the debt. The appellant makes other argument that needs no present discussion. The result reached is that the demurrers to the first cause of action and the demurrer to the complaint should be sustained and to the second cause of action overruled, with leave to plaintiff to amend his complaint on payment of costs, but not of this appeal.

JENKS, P. J., CARR, STAPLETON and PUTNAM, JJ., concurred.

Demurrers to the first cause of action and to the complaint sustained, and to the second cause of action overruled, with leave to plaintiff to amend his complaint on payment of costs, but not of this appeal.